Michael Lynn **RILEY, Petitioner,**

v.

**Janie COCKRELL, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

**Civil Action No. 1:99cv005.**

United States District Court,
E.D. Texas,
Beaumont Division.

July 17, 2002.

Alexander Lee Calhoun, Austin, TX, for Plaintiff.

Theresa Ann Kraatz and Deni S. Garcia, Austin, TX, for Respondents.

### *MEMORANDUM OPINION DENYING PETITION FOR WRIT OF HABEAS CORPUS*

SCHELL, District Judge.

Petitioner Michael Lynn Riley ("Riley"), an inmate in the custody of the Texas Department of Criminal Justice, Institutional Division, filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Riley challenged his conviction and death sentence imposed by the 114th Judicial District Court of Wood County, Texas, in cause No.12,101, styled *The State of Texas v. Michael Lynn Riley.*

On February 1, 1986, at approximately 9:30 a.m., Riley fatally stabbed Winona Lynn Harris, a convenience store employee, during a robbery. At approximately

1:00 p.m., Riley arrived at the Sheriff's office, hinted that he knew something about the killing and left. The Sheriff then went to Riley's house and brought him back to the office. Riley waived his *Miranda* rights and confessed to the killing. On September 18, 1986, he was indicted for capital murder pursuant to Tex. Penal Code Ann. § 19.03(a)(2) (Vernon 1989). He was tried before a jury and found guilty on November 17, 1986. Following a separate punishment hearing, the jury answered the special sentencing issues such that the trial judge sentenced Riley to death.

On November 10, 1993, the Texas Court of Criminal Appeals reversed his conviction and sentence on the grounds that a venireperson was improperly struck from the jury. *Riley v. State*, 889 S.W.2d 290, 296–97 (Tex.Crim.App.1993), *cert. denied*, 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995).

The State of Texas opted to retry Riley. On June 16, 1995, Riley filed a motion to set aside the indictment on the grounds that the Texas capital sentencing statute was unconstitutional. At a pretrial motions hearing on July 10, 1995, the trial judge stated that the motion was denied, but inadvertently signed an order which granted the motion. The order was entered on that date.

Neither the trial court nor the parties were aware that the indictment had been set aside, because on September 5, 1995, Riley's second trial commenced. Riley pled guilty to the capital murder charge in the 1986 indictment, however, under Texas law a not-guilty plea was entered, and the State was required to prove beyond a reasonable doubt all of the elements of the charge. On September 6, 1995, a jury again convicted Riley. After a two-day punishment hearing, the jury again answered the first two special punishment issues in the affirmative and the third in the negative,[1] and on September 8, 1995, the Hon. Cynthia Stevens Kent sentenced Riley to death.

On May 28, 1997, the Texas Court of Criminal Appeals affirmed the conviction and sentence in an unpublished opinion. *State of Texas v. Michael Lynn Riley*, No. 72,229. Riley did not seek a writ of *certiorari* from the United States Supreme Court. Instead, on April 1, 1998, Riley filed an application for a writ of *habeas corpus* in state court. The application was heard by Judge Kent, who was also the trial judge. At the June 26, 1998, evidentiary hearing on the application, the judge responded to Riley's claim that the trial court lacked jurisdiction because she signed an order setting aside the 1986 indictment. Refusing to recuse herself or to submit to questioning by counsel, the judge stated that her July 10, 1995, order was a clerical error and then entered an order reinstating the indictment *nunc pro tunc.*

On September 8, 1998, the trial court entered findings of fact and conclusions of law denying all of Riley's claims. On De-

---

**1.** The three special punishment issues, provided in Tex Penal Code Ann. Sec. 37.071(b) (Vernon 1994):

 1. whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

 2. whether there is a probability that the defendant would commit criminal acts of violence in the future that would constitute a continuing threat to society; and

 3. whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

cember 16, 1998, the Texas Court of Criminal Appeals adopted the trial court's findings and conclusions with the exception of findings 39 and 40.[2] *Ex Parte Riley,* No. 39,238–01. On April 9, 1999, Riley filed a petition for a writ of *habeas corpus* in this court. On June 1, 1999, the Director answered and moved for summary judgment on all of Riley's claims. On January 4, 2001, Riley responded to the motion. It is thus ripe for determination.

### Standard of Review

28 U.S.C. § 2254(d) provides that

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In addition, 28 U.S.C. § 2254(e)(1) provides that

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

In the present case, the Texas Court of Criminal Appeals denied nearly all of Riley's claims and sub-claims on the merits, either on direct appeal or on his State *habeas corpus* application. This court's analysis of those claims and sub-claims is limited to determining whether the Texas Court of Criminal Appeals' decision contravened clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or involved an unreasonable determination of the facts in light of the evidence presented. The sub-claims not directly addressed by the Texas Court of Criminal Appeals are reviewed *de novo.*

■ The presumption of correctness under 28 U.S.C. § 2254(e)(1) changes the way in which summary judgment motions are analyzed. In an ordinary civil case, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In a *habeas corpus* case, however, the evidence

---

**2.** The findings not adopted by the Texas Court of Criminal Appeals were:

39. Applicant's counsel did not instruct the psychologist to determine the Applicant's future dangerousness.

40. Applicant's counsel's decision to not instruct the psychologist to determine the applicant's future dangerousness was a reasonable trial strategy made after thorough, thoughtful, and meaningful consideration of all the evidence. The Court finds that the defensive theory was to concentrate on the punishment phase of the trial emphasizing the future dangerousness issue with the stated goal of achieving a life sentence. The underlying thesis for this defense was that Applicant had not been a threat for the last nine (9) years in prison, and if sentenced to life, would not be a threat in the future. By focusing the psychologist's testimony toward this stated goal, it was counsel's reasonable trial strategy that the defensive theory would be conveyed to the jury. The Court further finds that trial counsel discussed and attempted to prepare the psychologist for the state's cross-examination that future dangerousness was not limited to the prison setting.

of the petitioner will not be credited, and inferences will not be drawn in his favor, unless he rebuts by clear and convincing evidence the facts found by the state court. *Emery v. Johnson,* 940 F.Supp. 1046, 1051 (S.D.Tex.1996), *aff'd.,* 139 F.3d 191 (5th Cir.1997), *cert. denied,* 525 U.S. 969, 119 S.Ct. 418, 142 L.Ed.2d 339 (1998).

## Analysis

In his petition, Riley raised three major claims:

1. The District Court lacked jurisdiction to try him for murder.

2. He received ineffective assistance of counsel at trial. (Riley raised seven sub-claims under this claim.)

3. He was denied a fair and impartial jury. (Riley raised five sub-claims under this claim.)

### 1. Lack of jurisdiction claim

Riley contends that the trial court lost jurisdiction over his case when Judge Kent set aside the indictment, and as a result, his conviction in the trial that followed is invalid.

Although a conviction in the absence of a valid indictment is invalid, *see Garcia v. Dial,* 596 S.W.2d 524, 528 (Tex. Crim.App.1980), in the present case the judge issued a *nunc pro tunc* order reinstating the indictment. Under Texas law, the entry of a *nunc pro tunc* order reinstating a dismissed indictment after the jury has convicted the defendant cures the invalid conviction if the original dismissal of the indictment was a "clerical error." *Jiminez v. State,* 953 S.W.2d 293, 295–96 (Tex.App.-Austin 1997, writ ref'd.); *English v. State,* 592 S.W.2d 949, 955–56 (Tex. Crim.App.), *cert. denied,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980). A "clerical error" is an error in which no judicial reasoning is involved, such as here where the judge stated in open court that the motion is denied, but checked the box on the order marked "granted" instead of the box marked "denied." By contrast, a "judicial error" occurs if the judge intends to grant the motion at the time she signed the order, but later realized that her legal reasoning was incorrect. *Id.*

In the present case, Judge Kent's factual findings on this issue were adopted by the Texas Court of Criminal Appeals. They were:

57. Regarding Applicant's claim that the indictment was dismissed, the Court finds that numerous motions were heard in pre-trial hearing on July 10, 1995 including three motions entitled: Motion to Quash the Indictment, Motion to Declare Unconstitutional Article 37.071, Motion to Declare Unconstitutional Article 37.071(g) and Motion to Set Aside Indictment Due to Unconstitutionality of the Statute. The Court signed many different orders but only directed the clerk to file those orders which were finally decided and ruled upon by the court. Although the order now complained about in this writ was signed the clerk was not directed to file this order as it was not signed by the judge for filing in the case and did not reflect the ruling of the court. The clerical error of the filing of this order was corrected by the trial court when the clerical error was brought to the court's attention in a *nunc pro tunc* order.

\* \* \*

59. The Court further finds and Applicant admits that the order relied upon by Applicant in support of his jurisdictional complaint was the order submitted on Defendant's Motion to Set Aside Indictment Due to Unconstitutionality of the Statute. The Court further finds that it denied said motion, but through a clerical error the wrongly checked order was file marked by the clerk instead of the proper order reflecting the actual

ruling of the trial court. This clerical error has been corrected by a *nunc pro tunc* order signed June 26, 1998.

Under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." The record supports the statement in Finding of Fact # 59 that the judge "denied" the motion, both because the judge announced orally that the motion was denied, and because the court and the parties thereafter proceeded to trial. The record also supports that statement in Finding of Fact # 57 that the order was signed because it bears the judge's signature, and the statement in Finding of Fact # 59 that the order was "wrongly checked" because the judge wrote the word "granted" and drew a line through the word "denied." Accordingly, the record supports the statement in both Findings of Fact Nos. 57 and 59 that the order did not reflect the actual ruling of the Court.

Although Judge Kent never explicitly stated in the Findings of Fact that she signed the order, the court finds from the record that she did since her signature appears on the order. These facts, taken together, establish that Judge Kent committed a clerical error as the term was defined in *English v. State*. Accordingly, her later *nunc pro tunc* order validly and retroactively restored the trial court's jurisdiction[3]. Therefore, the court will grant the Director's motion for summary judgment as to Riley's first claim.

## 2. Ineffective assistance of counsel claim

Riley alleges seven incidents of ineffective assistance:

a. failing to request that the trial court instruct the jury that, if sentenced to life imprisonment, he would not be eligible for parole for fifteen years;

b. failing to exercise a peremptory challenge on venireperson Sarah Blakemore;

c. contending that he would not be a future danger in prison, rather than to society;

d. failing to obtain and present evidence that Riley was mentally retarded;

e. failing to argue that Riley, by confessing and by pleading guilty, accepted responsibility for his crime;

f. contending in his closing argument that there was no mitigating evidence; and

g. conceding that Riley was a "bad person" and failing to plead for Riley's life.

To establish a claim for ineffective assistance of counsel, Riley must show both that his counsel's performance fell below what would be objectively reasonable for a competent attorney, and that, had his counsel not performed deficiently, there is a reasonable probability that the result in his case would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If the court finds that a petitioner cannot establish one of the two prongs of the test, it is unnecessary for the court to analyze whether petitioner can establish the other. *Id.* In reviewing trial counsel's performance, the court presumes that counsel acted reasonably, and it will generally defer to counsel's strategic and tactical decisions. *Id.* at 689–90, 104 S.Ct. 2052.

---

**3.** Judge Kent's *nunc pro tunc* order itself stated: "This[n]unc pro tunc order replaces and corrects *the clerical error contained in the order dated July 10, 1995, in this cause which incorrectly reflects the trial court's action,"* (emphasis added)

a. **failing to request that the jury be instructed that a defendant convicted of capital murder and sentenced to life imprisonment would not be eligible for parole until he served at least 15 calendar years**

■ The Texas Court of Criminal Appeals found that trial counsel did not request this instruction. *See* Finding of Fact 50. Because counsel is not required to make futile motions, *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990), in order to determine whether this failure constituted deficient performance, the court must analyze whether requesting this instruction would be futile, that is, whether there was a reasonable probability that, had counsel requested the instruction, his request would have been granted.

The court finds that there is not a reasonable probability that a request for this instruction would have been granted because, under Texas law, "[t]he matter of parole is not a proper consideration for jury deliberation on punishment in a capital murder trial." *Jones v. State,* 843 S.W.2d 487, 495 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). Further, it would not have been reasonable to preserve the issue as there was not a reasonable probability of reversal since the Supreme Court has stated that it would not lightly second guess the Texas rule. *See Simmons v. South Carolina,* 512 U.S. 154, 167–168, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). Because requesting the instruction would have been futile, counsel's failure to do so does not constitute deficient performance. This sub-claim does not meet the first prong of the *Strickland* test.

Because Riley cannot establish the first prong of the test, it is unnecessary for the court to determine whether, had the jury been instructed on Riley's parole eligibility if given a life sentence, there is a reasonable probability that the result in his sentencing hearing would have been different. The motion for summary judgment will be granted as to this sub-claim.

b. **failing to use a peremptory challenge on venireperson Sarah Blakemore**

■ During *voir dire,* venireperson Blakemore stated that she had a non-refundable booking on a foreign trip scheduled to start shortly after the trial was to commence. The trial judge explained to her that the trial would probably conclude before her trip, which proved to be the case. Neither side moved to excuse her. The Texas Court of Criminal Appeals found:

49. Applicant's trial counsel made a reasonable trial tactics decision not to challenge Juror Blakemore after thorough, thoughtful and meaningful consideration of all the available information as to other juror's ability to serve considering the number of unused peremptory strikes and the number of remaining jurors to be questioned.

The question of whether a decision was a tactical one is a question of fact, the finding of which will be presumed correct. However, whether the tactic was reasonable is a question of law, which is reviewed *de novo. Moore v. Johnson,* 185 F.3d 244, 261 (5th Cir.1999). Nevertheless, *Strickland* requires the court to presume that counsel's tactics were reasonable. Accordingly, the burden is on Riley to rebut the presumption that counsel's decision not to exercise a peremptory challenge against venireperson Blakemore was reasonable. Riley has produced no evidence rebutting the presumption. Accordingly, he cannot establish the first prong of the *Strickland* test. Because Riley cannot establish the first prong of the test, the court need not analyze whether, had counsel peremptorily challenged this juror, there is a reasonable probability that the result in his sentenc-

ing hearing would have been different. The motion for summary judgment will be granted as to this sub-claim of Riley's second claim.

Riley's next five sub-claims concern counsel's representation during the punishment phase of his trial. Riley's counsel believed that Riley's best chance of avoiding the death penalty was to concede guilt and to concentrate on the punishment phase of the trial. Because Riley had behaved well during the nine years he had been in prison since his original conviction, counsel attempted to convince the jury to vote "no" on the second special issue, whether there was a probability that he would commit acts of criminal violence which would constitute a continuing threat to society. Although counsel was aware of some mitigating evidence, he believed that it was not strong enough to influence the jury to vote "yes" on the third issue, whether there were sufficient mitigating circumstances to justify imposing a sentence of life imprisonment rather than a sentence of death. Counsel also believed that raising a comparatively weak mitigation argument would reduce his credibility, which would lessen the persuasiveness of the comparatively strong future dangerousness argument. Counsel argued to the jury that although there was no mitigating evidence, and that he "would not lie to you" about the absence of such evidence, Riley should not be sentenced to death because he was not a future danger to society. Riley contends that both counsel's manner of arguing the future dangerousness issue and his decision not to offer mitigating evidence were unreasonable.

### c. contending only that there was not a probability that Riley would be a future danger in prison, rather than that he would not be a danger either in or out of prison

Counsel testified at the evidentiary hearing on Riley's state *habeas corpus* application that he understood at the time of the trial that the question the jury was required to answer in the second special issue was whether there was a probability that Riley would commit acts of criminal violence that would pose a continuing threat to "society," and that "society," under Texas law, could include both people inside the prison system and people outside the prison system. 2 SHR 81–82. However, counsel argued only that Riley was not likely to commit acts of violence while in prison.

Riley's defense thus depended upon the jury's interpreting the term "society," as used in the second special issue, as Riley's prison environment. The prosecution attempted to persuade the jury to distinguish between these terms and vigorously cross-examined Riley's witnesses on the distinction. For example, while each of Riley's lay witnesses testified on direct examination that in their opinion Riley would not be a future danger in prison, many conceded on cross-examination that in their opinion he would be dangerous outside of prison. *See, e.g.,* 29 TR 242–246. In addition, after Riley's expert witness, Dr. Patrick Lawrence, Ph.D., testified that Riley was not likely to commit crimes of violence in prison, the expert admitted on cross-examination that he had not formed an opinion, and in fact had not been asked to form an opinion, as to whether there was a probability that Riley would commit crimes of violence if he were not in prison. 28 TR 289–90.

The issue is whether Riley's counsel's decision to base his defense on the jury's interpretation of the term "society" as Riley's prison environment was unreasonable. The court will review this claim *de novo* because the Texas Court of Criminal Appeals' findings did not directly address the phrases at issue, finding only that:

44. [Counsel's] reasonable trial strategy did not include any justification for this murder but included a reasonable strategy that the defendant would not be a future danger based upon his good conduct during his period of incarceration.

As stated above, the court's analysis starts from the premise that counsel's actions are presumed to be reasonable, so the burden rests with Petitioner to establish that counsel's actions were unreasonable. Counsel is expected to perform a reasonable investigation into both the controlling law and the facts. *See Strickland*, 466 U.S. at 680–81, 104 S.Ct. 2052. Riley implies that counsel must· not have performed a reasonable investigation into the controlling law, because, had he done so, he would have found *Campbell v. State*, 910 S.W.2d 475, 480 n. 12 (Tex.Crim.App. 1995), *cert. denied*, 517 U.S. 1140, 116 S.Ct. 1430, 134 L.Ed.2d 552 (1996) and *Jones v. State*, 843 S.W.2d 487, 495 (Tex.Crim.App. 1992), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993) both of which held that the term "society," as used in the second special issue, includes both people inside and outside of the prison.

Having reconstructed the state of the law at the time of Riley's trial in early September, 1995, the court finds that his counsel was not unreasonable in believing that the law allowed the jury to equate "society," as the term is used in the second special issue, with Riley's prison environment. In *Rougeau v. State*, 738 S.W.2d 651, 659–60 (Tex.Crim.App.1987), *cert. denied*, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988), defendant appealed his death sentence on the grounds that, because he could not be a threat to "society" as long as he was not released from prison, it was irrelevant whether he was a threat to other inmates while incarcerated. Rejecting this argument, the Texas Court of Criminal Appeals held:

It is obvious to us that in deciding whether to answer the special issue in the negative, the jury would clearly focus its attention on the "society" that would exist for the defendant and *that* society would be the society that is within the Department of Corrections.

*Id.* (emphasis in original). In the present case, Riley's counsel's strategy was entirely consistent with this definition. Five years later, however, the court in *Jones* was presented with a nearly identical argument and reached the same result, but worded the answer somewhat differently:

[A]ppellant attempted to present expert testimony that [he] would never be paroled. [He] argues that this evidence is helpful to the jury because it could have considered the fact that appellant would never be paroled and thus, would never constitute a threat to society. Appellant's argument fails. This Court has held that "society includes not only free citizens but also inmates in the penitentiary." (citation omitted.) Therefore, the length of time appellant remains incarcerated is not relevant to the issue of whether he will be a continuing threat to society.

843 S.W.2d at 495. Finally, in June of 1995, the Texas Court of Criminal Appeals was once again presented with the issue of whether the question of parole is relevant to the jury's determination of future dangerousness to society. In *Campbell*, the court again held that it was not, but added in a footnote:

We note that the term of years appellant will serve does not affect whether appellant will be a future danger. Because we have defined "society" to include both prison and non-prison populations, the jury should consider appellant's potential danger in the context of both prison and non-prison populations. (see *Jones*, 843 S.W.2d at 495 (defining "soci-

ety"); *Boyd v. State,* 811 S.W.2d 105, 118 n. 12 (Tex.Crim.App.1991) (same)). 910 S.W.2d at 480 n. 12. This footnote suggests that in the eight years between *Rougeau* and *Campbell,* the Texas Court of Criminal Appeals gradually changed its view, holding initially that the jury could define "society" as solely the defendant's prison environment, but later saying that the jury should decide the future dangerousness question in both the prison and the non-prison contexts.

■ There are two problems with this analysis, at least if it is used to judge the reasonableness of Riley's counsel's strategy in the present case. First, the *Boyd* case, cited with approval as having defined "society" as both prison and non-prison populations, in fact cited *Rougeau's* definition, which limited society to the prison environment. Second, the *Campbell* decision was only announced in June of 1995, and it was under reconsideration at the time of Riley's trial. Because the law on this issue was both ambiguous and unsettled at the time of Riley's trial, it was not unreasonable for counsel to believe that the jury could interpret the word "society" to include only people within the prison. That is what counsel argued to the jury on several occasions. For example, after the prosecution had argued that Riley would be a danger to any young woman he saw entering a convenience store, defense counsel argued:

> Number one, the society he's in is prison. The society he's going to be in is prison. He's in prison. You'll notice the guards, their answers were, "Well, what is he doing in a convenience store? You know, he's not there. He's in prison."

30 TR 413.

■ Another example, a short time later in the same closing:

> Defense counsel: But what we're talking about is: Is he a future danger in prison society? Every one of you were asked by Mark—
> The Prosecution: Objection, your honor. That's not the issue before the Court.
> The Court: And I believe that's what he said they were talking about. And you may proceed with your closing arguments.
> Defense counsel: Let me think about this.—is he a danger where he's going to be? Is he a danger where he is? Is he a danger where he's been for nine years? The answer is "no." From the evidence, it's clearly "no."

*Id.* at 418. Riley has not rebutted the presumption that his counsel's trial strategy was reasonable. He thus cannot establish that his counsel's performance was deficient under *Strickland.* As stated previously, once a court determines that a petitioner cannot establish the "deficient performance" prong of the *Strickland* test, it is unnecessary to analyze whether he has established the "prejudice" prong of the test. Nevertheless, in the present case the court is obliged to point out that he has not. To establish prejudice, Riley would have to establish that had his counsel requested Dr. Lawrence to opine whether Riley would commit crimes of violence which would constitute a continuing danger to people outside of the prison environment, Dr. Lawrence would have in fact given that opinion, and had Dr. Lawrence so testified, there is a reasonable probability that the result in his punishment hearing would have been different. Riley has failed even to allege, much less to establish, either of these circumstances. Accordingly, the court finds that Riley was not prejudiced by his counsel's conduct in this instance. This sub-claim meets neither prong of the *Strickland* test. Therefore, the court will grant the Director's motion for summary judgment as to this sub-claim.

Riley's next four sub-claims concern counsel's failure to attempt to persuade the jury to vote affirmatively on the third special issue, whether there were sufficient mitigating circumstances to justify imposing a sentence of life imprisonment rather than death. He contends that counsel was deficient in four ways.

### d. failing to develop and present evidence that Riley was mentally retarded.

 Texas Court of Criminal Appeals found:

41. Appellant's trial counsel's reasonable trial strategy included a decision that evidence of any mild mental illness, mental disease or retardation would not benefit the defendant in the jury's determination of the issues at trial. . . .

As stated above, the State court's finding that counsel's decisions were a result of strategy is presumed correct. The court also presumes that the strategy counsel employed was reasonable, not because the State court in this case so found, but rather because this court is required to do so under *Strickland*.

 In the present case, counsel testified at the evidentiary hearing on Riley's state post-conviction relief application that he was aware of a 1973 report which stated that Riley had an I.Q. of 67, but decided against introducing any evidence of mental retardation because first, he didn't believe Riley was in fact mentally retarded, and second, because he believed that "what can be mitigation can be aggravation." Counsel believed that evidence of organic brain damage was "theoretically mitigating," but "a jury will turn around and say it's aggravating." In the six capital trials that he had been involved in, he had never seen anything in terms of mitigating evidence that had been effective. 2 SHR 79–85. He believed that introducing weaker evidence of mitigation would lessen his credi-

bility, weakening his argument that there was not a probability that Riley would pose a future danger to society. *Id.* at 91.

The Fifth Circuit has held that it is not deficient performance to forego offering evidence that a defendant is in the borderline mental retardation range. *See Andrews v. Collins*, 21 F.3d 612, 624 (5th Cir.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995). An I.Q. between 50–70 is in the borderline mentally retarded range. *Id.* In addition, foregoing presenting evidence of mental deficiency is considered reasonable if counsel believed the jury might use it to find that a defendant posed a future danger to society. *See Motley v. Collins*, 18 F.3d 1223, 1227–28, (5th Cir.), *cert. denied*, 513 U.S. 960, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994). The Court finds that Riley has not rebutted the presumption that counsel's decision to forego introducing evidence of his mental retardation was reasonable. Accordingly, Riley has not established the first prong of the *Strickland* test.

Further, Riley has failed to establish that had counsel conducted further investigation, he would have uncovered more evidence that Riley was mentally retarded, or that, had he offered such evidence, there was a reasonable probability that the result in the sentencing phase of his case would have been different. This sub-claim fails to meet either prong of the *Strickland* test. The court will grant the Director's motion for summary judgment as to this sub-claim.

### e. failing to argue that by confessing and pleading guilty Riley was accepting responsibility for his crime

 The Texas Court of Criminal Appeals did not make specific findings on this sub-claim, so the court reviews it *de novo*. *See* page 4 above. Under *Strickland*, the

court presumes that counsel's actions result from the exercise of sound strategy. *See* page 8 above. At the evidentiary hearing on Riley's state application for post-conviction relief, his trial counsel testified that it was his intention to make this precise argument. 2 SHR 85. When first asked if there was any reason why he did not in fact argue this point to the jury on closing, counsel answered "no." *Id.* at 90. But when asked essentially the same question a second time, he answered, "I felt like they saw it for themselves and would factor that in." *Id.* at 95.

Assuming *arguendo* that Riley has established the first prong of the *Strickland* test, the court must determine whether there is a reasonable probability that, had counsel made this argument, the result in the punishment phase of his trial would have been different. The court also assumes that the jury did not factor in Riley's guilty plea and acceptance of responsibility, and that they would have done so had counsel made the argument. Even were this true, the court finds that there is not a reasonable probability that the result of the sentencing phase of Riley's trial would have been different. Considering that the jury found that there was a probability that Riley would be dangerous in the future, and recognizing that Riley does not contend that the acceptance of responsibility would have affected that finding, it is not reasonably probable that the mere fact that Riley accepted responsibility for his past conduct would cause the jurors to overlook his future dangerousness. Because Riley cannot establish the second prong of the *Strickland* test, the court will grant summary judgment as to this subclaim.

**f. contending during closing argument that there was no mitigating evidence**

■ During Riley's punishment hearing, witnesses testified that Riley is of below average intelligence, he both confessed and pled guilty to the crime and as such, he accepted responsibility for his crime, he was the product of a single parent home, he helped take care of his younger brothers and sisters when his mother worked and got a job to help with family expenses, he had on occasion given his sister money when she needed it for her children, he had been a good athlete in high school, and he built clocks for his family while in prison.

Counsel testified that he did not believe that there was sufficient mitigating evidence to justify an affirmative finding by the jury on the third punishment issue, and that accordingly, his credibility, and the impact of his strongest argument—the absence of future dangerousness—would be heightened if he downplayed the mitigation evidence and emphasized the absence of future dangerousness evidence. As a result, at closing he stated: "I'm not asking you to look at mitigation. It's not-not there. Wouldn't lie to you." 29 TR 430.

The state court found:

45. Applicant's trial attorney's conceding there was no mitigation evidence was a tactical trial decision made after thorough, thoughtful and meaning (sic) consideration of all the evidence. Such tactical decision was reasonably (though unsuccessfully) made to promote credibility with the jury in advancing what counsel believed was the strongest trial theory to obtain a negative answer to the future dangerousness issue which would insure a life sentence and avoid the death penalty.

Pursuant to 28 U.S.C. § 2254, the Court presumes correct the State court's finding that counsel's decision was tactical, and pursuant to *Strickland,* the court presumes that counsel's tactical decision was reasonable.

Counsel's testimony at the evidentiary hearing is problematic because, as a matter of logic, putting on mitigation evidence only to argue in closing that "mitigation is not there" would generally be expected to lessen, rather than enhance, counsel's credibility. It is, of course, possible that at the time counsel testified in Riley's state *habeas corpus* evidentiary hearing, he did not remember precisely why he chose to minimize the mitigation evidence in his closing argument. This seems likely because the transcript of the closing argument strongly suggests counsel was employing a strategy considerably more subtle and clever than simply "enhancing his credibility with the jury" about which he later testified. Counsel repeatedly argued that the jury should ignore the prosecution's attempts to play on their emotions and their sympathy for the victim and instead simply decide the second special issue (future dangerousness), based solely on the relevant evidence. *See* 29 TR 429–31. By bringing in similar emotional evidence in Riley's favor and casting it aside, counsel modeled for the jury how they should decide the case, while at the same time possibly balancing somewhat the impact of any emotional appeal by the prosecution in its closing arguments. As the court can discern a sound strategy underlying counsel's actions, it finds that those actions were not unreasonable.[4]

Because Riley cannot establish the first prong of the *Strickland* test, it is unnecessary for the court to consider whether he can establish the second. The court grants the Director's motion for summary judgment as to this sub-claim.

### g. conceding during closing that Riley was a bad person and failing to plead for his life

■ Because the State court did not make specific findings regarding this issue, the court reviews this claim *de novo*, presuming that counsel acted reasonably. *See* page 4. Counsel argued the following:

You've got the best evidence. You've got it. It's before you. The evidence speaks clearly. And the evidence cries out—cries out very clearly that Mr. Riley is not a future danger.

Doesn't say he's a good guy. Doesn't say that. Doesn't say he's not a thief. Does not say that. But it does say that the very people that you and I want to protect think he's not a future danger. He is not a future danger from the evidence. And I ask you to so find.

Counsel's admission that the evidence "does not say that [Riley] was a good guy" was made in the context of an argument that the jury should concentrate on the future dangerousness issue and not be distracted by emotion, or by other aspects of Riley's character. The particular remarks at issue were perhaps not necessary to make the argument, but they were accurate and did not undermine the argument itself, so the court finds that Riley has not rebutted the presumption that his counsel acted reasonably in this instance.

■ As to Riley's contention that counsel failed to plead for his life, the court agrees that, at least in a case where the defendant prefers life imprisonment to the death penalty, counsel must at least ask the jury not to give the defendant the death penalty.[5] *Compare Carter v. John-*

---

4. This strategy was admittedly not without risk. A jury member may have been inclined to vote yes on the third special punishment issue, only to change his or her mind when told by defense counsel that the evidence was insufficient to justify doing so.

5. In this context, the term "plead" is ambiguous. As a legal term of art, it means to state or to ask. In common parlance, it means to beg. The Court holds that counsel must ask, but need not beg.

son, 131 F.3d 452, 466 (5th Cir.1997) *cert. denied,* 523 U.S. 1134, 118 S.Ct. 1836, 140 L.Ed.2d 968 (1998). The court has not, however, found any authority that counsel is required to ask explicitly, as opposed to asking implicitly. There is no dispute that Riley's trial counsel implicitly asked that his life be spared. His closing argument focused on Riley's lack of future dangerousness and urged the jury to vote negatively on the second special issue. The jury understood that to do so would result in a sentence of life imprisonment, not death. Therefore, the court finds that, contrary to Riley's allegation, counsel did in fact ask the jury to spare Riley's life. For example, defense counsel argued:

Now, when—I think Mr. Taylor, in one of his opening arguments, made some allusion to "the victim's blood cries out." And quoting Moses could not get you wrong. Couldn't go wrong. May I suggest to you that that particular Scripture, however—and it has to do with Cain killing his brother Abel—that God did not kill Cain.

I suggest to you that there is a place for mercy.

But this is not even mercy. This is justice. The system says justice is answering these questions and answering them honestly—intellectually, honestly, and answering them not on the basis of emotion, but on the basis of truth .... [t]he proof is there beyond a reasonable doubt that he's not a future danger. And I'm not making any apology when I ask you to make that decision simply on the basis of evidence which has been brought to you by the people who will be the most affected by your decision.

29 TR 429–31.

 Riley has failed to rebut the presumption that his counsel acted reasonably in asking implicitly, rather than explicitly, that his life be spared. Accordingly, he cannot establish the first prong of the *Strickland* test with this sub-claim. Additionally, the court finds that there is not a reasonable probability that, had counsel refrained from conceding that he was a bad person and explicitly rather than implicitly asked the jury to spare his life, the result in his case would have been different. This claim meets neither prong of the *Strickland* test. The court will grant the Director's motion for summary judgment as to this sub-claim. Because the court grants the motion for summary judgment as to each of the sub-claims in Riley's second claim, it will deny the entire claim.

### 3. Denial of right to fair and impartial jury claim

Riley made five sub-claims:

a. Numerous members of the jury venire knew that he had previously been convicted and sentenced to death.

b. The trial court erroneously denied his motion for a change of venue.

c. The trial court erred in denying challenges for cause as to those venirepersons who had knowledge of his prior conviction and sentence.

d. The trial court erred in denying his challenge for cause against venireperson James Lee.

e. The trial court erred in denying his challenge for cause against venireperson Joann Minor.

In his petition, Riley cited no case authority in support of any of these sub-claims. In his response to the motion for summary judgment, he does not discuss these sub-claims at all. It is unclear whether they have been abandoned, however, the court will address the merits of each claim.

### a. numerous venirepersons knew of Riley's previous conviction and sentence

 A defendant is entitled to a trial by impartial jurors. *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751

(1961). Riley contends that numerous members of the jury venire were aware that he had previously been convicted and sentenced to death for the crime for which he was being retried. While this factual allegation is correct, "[J]uror exposure to information about a defendant's prior convictions or to news accounts of the crime with which he is charged alone [do not] presumptively deprive the defendant of due process." *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Because jurors are presumed to be impartial and indifferent, counsel is expected to take affirmative action if he or she feels that the jury deciding the defendant's fate is or will be biased. To state a claim for purposes of *habeas corpus* review, either trial counsel must have failed to take such affirmative action, which would establish a claim for ineffective assistance of counsel, or the trial court must have refused counsel's request for corrective action, such as denying a motion for change of venue, a challenge for cause, a motion to exclude television coverage, a motion to sequester the jury, or a motion for mistrial. Riley's second and third subclaims raise such alleged errors; this subclaim, however, does not. Accordingly, it is not cognizable under federal *habeas corpus* law.

### b. denial of motion for change of venue

The Texas Court of Criminal Appeals found that the trial court did not abuse its discretion in denying the motion for a change of venue. 5 AR 670. "Although a list of examples of abuse of discretion is difficult to formulate, generally, a district court abuses its discretion when it grants a motion … without oral or written reasons or if it fails to address and balance the relevant principles and factors." *Dickson Marine Inc. v. Panalpina Inc.,* 179 F.3d 331, 341 (5th Cir.1999). Whether the trial court performed these

duties is a question of fact. In order to obtain relief in federal *habeas corpus,* Riley must establish that the Texas Court of Criminal Appeals' decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court appellate proceeding. *See* 28 U.S.C. § 2254(d)(2). Accordingly, the burden on Riley on his direct appeal was to establish that in denying his motion for a change of venue, the trial court either failed to provide oral or written reasons for its decision, or failed to address and balance the relevant principles and factors. If Riley met this burden, this court would find unreasonable the Texas Court of Criminal Appeals' determination that the trial court did not abuse its discretion.

The record reveals that Riley argued at p. 67 of his appellate brief that the trial court abused its discretion in denying his motion for a change of venue. However, Riley neither alleged nor presented evidence that the trial court failed to provide oral or written reasons for denying the motion, or failed to address and balance the relevant principles and factors. Absent such evidence, this court cannot find that the Texas Court of Criminal Appeals' decision that the trial court did not abuse its discretion in denying Riley's motion for a change of venue was based upon an unreasonable determination of the facts presented.

### c. denial of challenges for cause

Riley contends that the trial court's denial of his challenges for cause of those venirepersons who knew of his previous conviction and death sentence denied him due process of law and a fair and impartial jury. The Texas Court of Criminal Appeals found that the trial court did not abuse its discretion in denying Riley's challenges for cause. 5 AR 673.

The issue is whether this finding by the Texas Court of Criminal Appeals was unreasonable in light of the evidence presented on appeal. 28 U.S.C. § 2254(d)(2). As with his previous claim, Riley did not offer any evidence that the trial court either did not give oral or written reasons for denying his challenges for cause, or did not address and balance the relevant principles and factors. Riley contended in essence that the judge reached the wrong decision in balancing the venirepersons' inherent tendency to be prejudiced as a result of knowing that he was being retried for a crime for which he had been previously sentenced to death, against their statements that they could put aside that knowledge and render a verdict based solely on the evidence produced at the trial. To establish an abuse of discretion, however, Riley would have had to show that the trial court did not address and balance these factors at all, not merely that the trial court reached the wrong result in balancing them. *See Dickson Marine,* 179 F.3d at 341. Accordingly, the court finds that the Texas Court of Criminal Appeals' determination that the trial court did not abuse its discretion was not based on an unreasonable determination of the facts in light of the evidence presented on appeal.

### d. and e. James Lee and Joann Minor—denials of challenge for cause

■ Riley contends that the trial court erroneously denied his challenges for cause as to these two venirepersons. He contends that, as a result, he was forced to use two of his allotted peremptory challenges to remove them. After exhausting the rest of his peremptory challenges, he was forced to accept two jurors, Rogers and Whittaker, who he would have removed had he had any peremptory challenges remaining.

The Texas Court of Criminal Appeals found that Riley suffered no deprivation of federal constitutional rights by the trial court's denial of his challenges for cause as to Lee and Minor, on the grounds that even if his challenges were erroneously denied, Riley removed both jurors with peremptory challenges and was granted two additional peremptory challenges. 5 AR 673–74. The issue is whether this decision is contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

In *Ross v. Oklahoma,* 487 U.S. 81, 85–86, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), the United States Supreme Court held that an erroneous denial of a challenge for cause did not deprive defendant of his right to due process or a fair trial if he thereafter removed the venireperson with a peremptory challenge. The court held that the inquiry was whether the jurors who actually sat were fair and impartial, and accordingly, if the defendant either did not challenge for cause any of the jurors who actually decided his case, or did not establish that his challenges for cause of sitting jurors were erroneously denied, he could not obtain *habeas corpus* relief.

In the present case, Riley did unsuccessfully challenge for cause venirepersons Lee and Minor, so his claim meets the initial criteria of *Ross.* However, because he removed them with his two extra peremptory challenges, he cannot establish a direct causal relationship between the denial of his challenges for cause of venirepersons Lee and Minor and the presence of Rogers and Whittaker on the petit jury. Put another way, had the court granted Riley's challenge for cause as to Lee and Minor, it would not have granted Riley two extra peremptory challenges. Once the trial court denied his challenges for cause as to venire persons Whittaker and Rog-

ers, he could not have prevented them from serving on the jury.[6]

The United States Supreme Court has never addressed whether asking for and receiving extra peremptory challenges moots claims that could otherwise be brought under *Ross*. *See, e.g., United States v. Martinez–Salazar*, 528 U.S. 304, 317–18, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (Souter, J., concurring.) Accordingly, the Texas Court of Criminal Appeals' decision that such claims are moot cannot, as a matter of logic, be directly contrary to Supreme Court precedent. The court also finds that the Texas Court of Criminal Appeals' decision does not involve an unreasonable application of either *Ross* or *Martinez–Salazar*.

Because none of Riley's five sub-claims establish a right to relief under 28 U.S.C. § 2254(d), the court will grant Respondent's motion for summary judgment as to Riley's third claim.

### Conclusion

For the reasons set forth above, the court will grant the Director's motion for summary judgment and deny Riley's petition for a writ of *habeas corpus*. An order and judgment will be entered.

---

**6.** Had Riley established that the trial court abused its discretion in denying Riley's challenges for cause as to Whittaker and Rogers, he could have been entitled to relief independent of his *Ross* claim. Riley, however, does not make this allegation; he merely contends that Whittaker and Rogers were "objectiona-ble." In sub-claim 3, the Court determined that the trial court did not abuse its discretion in denying Riley's challenge to 18 jurors, including Rogers. Riley made no claim of error regarding the trial court's denial of his challenge for cause as to juror Whittaker.