United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 16, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 02-41179

MICHAEL LYNN RILEY,

Petitioner - Appellant,

versus

JANIE COCKRELL, Director, Texas Department of
Criminal Justice—Institutional Division,

Respondent - Appellee.

Appeal from the United States District Court
For the Eastern District of Texas

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Petitioner, Michael Lynn Riley ("Riley"), is a death-row inmate in the custody of the

Texas Department of Criminal Justice, Institutional Division. The district court granted

Riley a certificate of appealability ("COA") based on one of his sub-claims of ineffective

assistance of counsel, because his trial counsel failed to investigate and present evidence

with regard to Riley's possible mental retardation. In this motion, Riley urges this Court

to grant him COAs on the three additional grounds that: (1) the trial court deprived itself

of jurisdiction by granting a motion to set aside the indictment, which rendered Riley's conviction and sentence unconstitutional under the Due Process Clause; and (2) trial counsel was ineffective because, (a) he argued that there were no mitigating factors that arose from Riley's personal history, and (b) he failed to argue that Riley had accepted responsibility for his crime when trial counsel specifically urged him to plead guilty for that purpose.

The state habeas court rejected all of the grounds Riley now advances on appeal, including his claim of ineffective assistance of counsel based on counsel's failure to investigate and present evidence of Riley's possible mental retardation. The Texas Court of Criminal Appeals adopted all but two of the state habeas court's findings.[1] Aside from granting a COA based on Riley's sub-claim of ineffective assistance of counsel, the district court rejected these additional grounds as possible bases for a COA. We now DENY Riley's motion for additional COAs.

## I. FACTS AND PROCEEDINGS

On February 1, 1986, at approximately 9:30 a.m., Riley fatally stabbed 23-year-old Winona Lynn Harris in the convenience store where she worked. Police found her stabbed and cut thirty-one times; some of the stab wounds were delivered with enough force to sever the underlying ribs. Later that day, Riley went to the Sheriff's office and told a deputy that he knew something about the murder, and left. The Sheriff went to Riley's

---

[1]The Court of Criminal Appeals declined to adopt the state habeas court's findings with regard to numbers thirty-nine and forty, which addressed trial counsel's failure to instruct the psychologist on Riley's future dangerousness.

house and brought him back to the Sheriff's office for further questioning. Riley led police to the evidence of the crime: bloodstained coveralls with $970 in the pocket that was hidden under some brush in a field close to Riley's house. Riley waived his Miranda rights and confessed to the murder.

A.     Lack of Jurisdiction Claim

The state of Texas twice tried, and twice convicted Riley for capital murder. In Riley's second capital murder trial, his attorneys filed numerous pre-trial motions, including a "Motion to Set Aside Indictment Due to Unconstitutionality of Statute", filed on June 16, 1995, and a "Motion to Quash Indictment", filed July 10, 1995. The trial court addressed these motions at a hearing on July 10, 1995. At the hearing, the judge stated in open court that she denied the motion to quash the indictment. The judge further verbally denied Riley's Motion to Set Aside the Indictment Due to Unconstitutionality of the Statute.[2]

After the hearing, the court entered a written order, in which it checked "GRANTED", rather than "DENIED", in the space designated for the disposition of the motion. All parties proceeded to trial. Later, during Riley's state habeas appeal a year later, he challenged the validity of the trial court's jurisdiction due to its clerical mistake on the written order. The state habeas judge, who was the same as the state trial judge, held an evidentiary hearing. Based on the reporter's record and from state law, the judge

---

[2]A colloquy between the court and Riley's counsel, Mr. Taylor, ensued, during which the court noted that she would deny the motion to set aside the indictment for issues related to Penry and the unconstitutionality of the statute.

determined that she had, indeed, denied the motion on the record, that the written order was clerical error, and that it was proper to rule on personal recollection. The state habeas court entered a nunc pro tunc order correcting the original order granting the motion to quash the indictment. The district court deferred to these findings in ruling that Riley was not entitled to a COA based on this ground.

B.      Ineffective Assistance of Counsel Claims

Riley's counsel, William C. Wright ("Wright"), advised him to plead guilty in the guilt phase,[3] and primarily focused on the punishment phase of the trial. While Wright mainly concentrated on the issue of Riley's future dangerousness, he presented some testimony from Riley's mother and sister, who testified about Riley's childhood in a large family without a father, where he helped care for siblings and provided financial assistance to both his mother and sister at different intervals. Riley's cousin testified that Riley was a good athlete and had made clocks as gifts for his family while in prison. The defense further presented testimony from several prison staff employees who testified that Riley was a model prisoner, had not displayed any violent tendencies, and was not a future danger in the prison setting. Wright did not highlight any possible mitigating factors during closing argument, aside from that evidence which demonstrated that Riley would not be a future danger in the prison setting. Instead, he stated: "I'm not asking you to look at mitigation. It's not—not there. Wouldn't lie to you." Wright later claimed, at

---

[3]Although Riley entered a guilty plea before the jury, the State did not accept the plea because it sought the death penalty. The State entered a plea of "not guilty" for Riley for purposes of trial.

4

the state habeas hearing, that his "no mitigation" argument was a measure taken to gain "credibility with the jury." The state habeas court found that this was a "reasonable trial strategy under the facts of the case," and that the outcome of the trial likely would not have been different if Wright had employed a different strategy.

Although Wright had advised Riley to plead guilty, in part, for the purpose of showing acceptance of responsibility for his crime, Wright never argued this point to the jury. Wright did, however, mention in his closing argument that Riley had confessed to the murder, and had led the police to the evidence when it was likely that the police would not have found it.[4] Wright did not state that Riley had plead guilty, but he highlighted the fact that he and his co-counsel had put on a limited defense in the guilt phase.[5] In the state habeas proceedings, Wright did not present an explanation for why he did not argue that Riley's guilty-plea was either relevant to future dangerousness or mitigation.[6] The district court assumed that counsel had been deficient for failing to incorporate the guilty plea within his final argument, but concluded that Riley had not sufficiently established prejudice.

## II. STANDARD OF REVIEW

---

[4]29 S. Tr. at 218.

[5]Id.

[6]The government claims that Wright did not present an explanation for his strategy because this ground for appeal was not advanced at the state level, and that the district court sua sponte re-formulated Riley's argument with regard to his guilty plea.

Because Riley filed his habeas petition on April 1, 1998, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to this appeal. See Neal v. Puckett, 286 F.3d 230, 235 (5th Cir. 2002)(citing Lindh v. Murphy, 521 U.S. 320, 324-26 (1997) (noting that AEDPA applies to all federal habeas corpus petitions filed on or after April 24, 1996)). "Under AEDPA, a COA may not issue unless the applicant has made a substantial showing of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 894 (1983) (internal quotations omitted)). To obtain a COA, the petitioner must show that

> reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003) (quoting Barefoot, 463 at 893 n.4)(internal quotations omitted)). In Miller-El, the Supreme Court stated that a petitioner seeking a COA must prove "something more than the absence of frivolity or the existence of mere 'good faith' on his or her part." 123 S. Ct. at 1040. Furthermore, the Court reiterated the guideline set forth in Slack: when the district court has rejected the petitioner's constitutional claims, to satisfy § 2253(c), the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. (quoting Slack, 529 U.S. at 484).

Moreover, in considering the petitioner's claims, 28 U.S.C. § 2254(e)(1) provides that:

6

a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

## III. DISCUSSION

A.    Lack of Jurisdiction Claim

Riley claims that because the trial court entered and signed an order granting his motion to set aside the indictment, the trial court lacked jurisdiction over his trial under Texas law. As such, Riley claims that his conviction and death sentence violate the Due Process Clause of the Fifth and Fourteenth Amendments. The State contends that the trial court's grant of the motion was a clerical mistake, as demonstrated by the trial court's verbal ruling in open court, and that the state habeas court's nunc pro tunc order cured the error. The district court agreed, and concluded that the trial court's "later nunc pro tunc order validly and retroactively restored the trial court's jurisdiction." Riley v. Cockrell, 215 F. Supp. 2d 765, 772 (E.D. Tex. 2002).

This Court will consider the sufficiency of the indictment as a basis for habeas relief if the mistake in the indictment is so fatally defective that it deprives the convicting court of jurisdiction. Meyer v. Estelle, 621 F.2d 769, 771 (5th Cir. 1980). It is well-settled under Texas law that when a trial court dismisses an indictment, the defendant is "discharged from the accusation against him . . . and, accordingly, no jurisdiction remain[s] in the dismissing court." Garcia v. Dial, 596 S.W.2d 524, 528 (Tex. Crim. App. 1980); Texas v. Holmes, 671 S.W.2d 896, 898-99 (Tex. Crim. App. 1984) (en banc). If the convicting court

7

lacks jurisdiction, then "the power of the court to act is as absent as if it did not exist," and the conviction and sentence are void. Garcia, 596 S.W.2d at 528. A trial court lacks jurisdiction to rescind an order to quash an indictment. Miller v. State, 909 S.W.2d 586, 592 (Tex. App. 1995).

Under Texas law, however, the entry of a nunc pro tunc order will cure a clerical error. Jiminez v. State, 953 S.W.2d 293, 295 (Tex. App. 1997). An error is clerical in nature if it did not involve judicial reasoning in its making. See English v. State, 592 S.W.2d 949, 955-56 (Tex. Crim. App. 1980) (holding that trial court was authorized to correct error by nunc pro tunc order overruling motion for new trial when the trial court had mistakenly signed an order granting a new trial).

Riley relies on In re Wal-Mart Stores, 20 S.W.3d 734 (Tex. App. 2000), for the proposition that once a court has dismissed an action, it cannot reinstate its jurisdiction solely on the basis that the dismissal resulted from a clerical error. Id. at 738. However, this case is inapposite. Riley neglects the fact that the plaintiffs in Wal-Mart never attempted to obtain a nunc pro tunc order. Rather, they argued that the court should ignore the order of dismissal, and issue a writ of mandamus to reinstate their case without officially correcting the mistake. See id. at 739. The court in Wal-Mart noted that a judgment nunc pro tunc may issue if there is "clear and convincing" evidence that the signed judgment did not accurately reflect the judgment rendered by the court. Id. at 739 n.5. The court did not rule on whether a judgment nunc pro tunc would be appropriate, however, because neither of the parties had raised the issue. Id.

8

In this case, the district court concluded, after careful analysis, that the entry granting the motion to set aside the indictment was a clerical error that did not involve judicial reasoning. Riley, 215 F. Supp. 2d at 771 (citing Jiminez, 953 S.W.2d at 295; English 592 S.W.2d at 955-56). The district court based its conclusion on the fact that the trial judge stated in open court that the defendant's motions to set aside and quash the indictment were both denied. Riley concedes that the trial court stated that it did not intend to grant the motions to quash and set aside the indictment.

Riley has failed to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" with regard to this issue. Miller-El, 123 S. Ct. at 1040. Taking the state court's findings as correct, the district court determined that the state habeas court validly entered a nunc pro tunc order correcting what it found to be a clerical error. Even given the "clear and convincing evidence" standard set forth in Wal-Mart, Riley has not rebutted the presumption of the truthfulness of the State habeas court's conclusions. Based on the state habeas court's findings, mainly that the trial court stated that it denied Riley's motions to quash and dismiss the indictment, reasonable jurists could not differ on the conclusion that the trial court's grant of the motion to dismiss the indictment was, in fact, a clerical error. Accordingly, we deny Riley's request for COA on this claim.

B.      Ineffective Assistance of Counsel

In his last two grounds for COA, Riley argues that Wright, his trial counsel for his second trial, was ineffective by: (1) arguing that there was no mitigating circumstances in

Riley's case in closing argument; and (2) failing to argue that Riley's initial guilty plea was an acceptance of responsibility. The district court found that Wright was not ineffective on either of these grounds.

A habeas petitioner who alleges ineffective assistance of counsel must demonstrate that counsel's performance was both (1) constitutionally deficient; and (2) resulted in actual prejudice. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997). A petitioner's claim will fail if he does not establish both prongs of the Strickland analysis. Strickland, 466 U.S. at 687.

To establish the first prong of Strickland, the petitioner must show that counsel's performance fell below an objective standard of reasonableness. Id. at 688. This Court's scrutiny of counsel's performance is highly deferential. Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. The petitioner must overcome the presumption that counsel's performance fell within the broad range of reasonable professional assistance. Carter, 131 F.3d at 463.

Even if counsel's performance was deficient, the petitioner must still demonstrate that counsel's deficient performance rendered the verdict "unfair or unreliable" Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). The petitioner has the affirmative duty to prove that but for counsel's deficient assistance , there is a reasonable probability that the outcome of the proceeding would have been different. Williams v. Taylor, 529 U.S. 362, 391 (2000).

10

If the petitioner brings a claim of ineffective assistance with regard to the sentencing phase, he has the difficult burden of showing a "'reasonable probability' that the jury would not have imposed the death sentence in the absence of errors by counsel." Carter, 131 F.3d at 463. A "reasonable probability" is a "probability that is sufficient to undermine confidence in the outcome." Williams, 529 U.S. at 391.

### 1. Failure to Argue Mitigation

Riley contends that his counsel was ineffective because, although he presented mitigating evidence through testimony by Riley's mother, sister, cousin, and death row staff members, he ultimately argued in closing that there were no mitigating circumstances in Riley's case. Riley asserts that this tactic was objectively unreasonable, and that it prejudiced the outcome by rendering the sentencing proceedings unreliable. The State, however, argues that Wright's singular comment—"I'm not asking you to look at mitigation. It's not—not there. Wouldn't lie to you"—was not enough to constitute ineffective assistance of counsel, especially when viewed in light of his entire closing argument. Instead, the State maintains that Wright's strategy was to focus on the future dangerousness aspect of the sentencing phase, and therefore his "no mitigation" argument fell within the broad range of reasonable professional assistance.

The state habeas court found that Wright's argument was not ineffective assistance of counsel. Specifically, it found:

> 43. [A]ny attempt by counsel to minimize the macabre facts or Applicant's responsibility and culpability for them would have resulted in a complete loss of counsel's credibility before

the jury and hurt the most evidentiary [sic] supported argument of lack of future dangerousness. The argument of counsel was a reasonable tactical trial strategy decision to advance the defensive theory to concentrate on the issue of future dangerousness.

44. Applicant's trial attorney's conceding there was no mitigation evidence was a tactical trial decision made after thorough, thoughtful, and meaning [sic] consideration of all the evidence. Such a tactical decision was reasonably (thought [sic] unsuccessfully) made to promote credibility with the jury in advancing what counsel believed was the strong trial theory to obtain a negative answer on the future dangerousness issue which would insure a life sentence and avoid the death penalty.

The Texas Court of Criminal Appeals adopted the state habeas court's finding that Wright's "no mitigation" argument was a means of promoting credibility with the jury, and that his strategy was to focus on future dangerousness. Presuming that the state habeas court's finding was correct under § 2254, the district court found that Wright's performance was not ineffective under the Strickland analysis. The district court noted, however, that by putting on mitigating evidence and later arguing that there were no mitigating factors, would seem to lessen, rather than enhance, Wright's credibility with the jury. As such, the district court hypothesized that Wright's strategy was likely directed at framing the inquiry for the jury, as he had earlier argued that the jury should disregard emotional appeals made by the prosecution in its closing argument.[7] Because the district

---

[7]Specifically, the district court found:

[c]ounsel repeatedly argued that the jury should ignore the

12

court could "discern a sound strategy underlying counsel's actions, it [found] that those actions were not unreasonable." Riley, 215 F. Supp. 2d at 779.

Mitigating evidence that illustrates a defendant's character or personal history embodies a constitutionally important role in the process of individualized sentencing, and in the ultimate determination of whether the death penalty is an appropriate punishment. Moore v. Johnson, 194 F.3d 586, 612 (5th Cir. 1999). Counsel may be deemed constitutionally ineffective if he fails to exercise reasonable professional judgment in investigating a defendant's personal history if the defendant's background would be relevant in evaluating the his moral culpability. See Wiggins v. Smith, __ S. Ct. __, 2003 WL 21467222 (June 26, 2003) (holding counsel was ineffective for failing to investigate the "powerful" mitigating evidence relating to defendant's extremely troubled personal history). Even given the important role of mitigating evidence, however, counsel's performance is not per se deficient if he fails to present such evidence. See id.; Moore, 194 F.3d at 615. In determining whether counsel's treatment of mitigating evidence prejudiced the petitioner's defense, a state court must "evaluate the totality of the available mitigation

---

> prosecution's attempts to play on their emotions and their sympathy for the victim and instead simply decide the second special issue (future dangerousness), based solely on the relevant evidence. By bringing in similar emotional evidence in Riley's favor and casting it aside, counsel modeled for the jury how they should decide the case, while at the same time possibly balancing somewhat the impact of any emotional appeal by the prosecution in its closing arguments.

215 F. Supp. 2d at 779 (citations omitted).

13

evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding in reweighing it against the evidence in aggravation." Williams, 529 U.S. at 397-98.

When examining counsel's closing argument to determine whether it was ineffective, this Court considers the closing argument in its entirety. Carter, 131 F.3d at 466 (citing Teague v. Scott, 60 F.3d 1167, 1173 (5th Cir. 1995)). To establish credibility with the jury, counsel may make a tactical decision to "acknowledge the defendant's culpability and may even concede that the jury would be justified in imposing the death penalty." Id.; see United States v. Short, 181 F.3d 620, 624 (5th Cir. 1999).

Examining Wright's closing argument in its entirety, the State habeas court and the district court were not unreasonable in concluding that Wright's actions were not unreasonable. The district court's alternative hypothesis for Wright's strategy of presenting mitigating evidence, but later arguing that there was no mitigation as a means of framing the inquiry for the jury, may be plausible. Yet, this alternative explanation is dicta, and is not firmly grounded in the evidence presented at the state habeas proceeding. Wright explicitly stated at the state habeas hearing that he employed the "no mitigation" argument to gain credibility with the jury.[8] While the district court did not find this to be

---

[8]During the hearing, the following colloquy between Riley's habeas lawyer, Barry Bryant, and Wright, ensued:

BRYANT: What would be the purpose of a lawyer arguing that his client is not a good guy?

WRIGHT: I think the purpose is to—if you come in and strike the jurors as being unrealistic and untruthful on the small issues, that when you get to the big issues, you have no credibility left.

14

a convincing rationale, it nevertheless noted that, pursuant to § 2254, it presumed correct the state court's finding that Wright's decision was strategic.

Although Wright presented mitigating evidence during the penalty phase, it is evident from his closing argument and the subsequent habeas hearing that he believed that Riley's strongest argument was lack of future dangerousness. Accordingly, his contention that it was his strategy to focus on this issue, for which he had strong evidence, rather than including the issue of mitigation, does not seem implausible, or unreasonable. Throughout the closing argument, Wright not only argued that Riley would not be a future danger in the prison population, he also stressed the importance of the jury's decision, and stated that justice demanded a life sentence, rather than death. Thus, given the deference entitled to the state habeas findings under § 2254, and the likelihood that Wright's "no mitigation" argument, while perhaps improvident, was part of his strategy to gain credibility with the jury and focus on the stronger issue of lack of future dangerousness, the state habeas court and district court were not unreasonable in concluding that Wright was not ineffective under Strickland.

    2.   Failure to Argue that Riley's Guilty Plea Constituted an Acceptance of

---

* * *

BRYANT: What did you hope to gain by saying, there's no mitigation, as opposed to simply not arguing it at all?

WRIGHT: Credibility with the jury.

2 S.H. Tr. at 91, 94.

Responsibility

In his final ground for seeking a COA, Riley argues that Wright's performance was ineffective because he failed to argue that Riley's guilty plea constituted acceptance of responsibility, despite the fact that Wright urged Riley to accept a guilty plea, in part, for the purpose of showing acceptance of responsibility. The State claims that Riley cannot raise this as a ground for COA, as he never raised the "guilty plea" argument in the present posture until the district court addressed Riley's ineffective assistance claims. The State contends that, at the state level, Riley argued only that Wright's performance was deficient in advising Riley to plead guilty in the guilt phase—not that his performance was ineffective because he did not argue acceptance of responsibility as a mitigating factor in closing arguments of the sentencing phase.

Section 2254(b)(1) requires a petitioner to exhaust his remedies in the state courts before applying for relief in federal court. See Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001). "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Id. (internal quotations and citations omitted). It is not enough that the facts applicable to the federal claim were all before the State court, or that the petitioner made a similar state-law based claim. Anderson v. Harless, 459 U.S. 4, 6 (1982). The federal claim must be the "substantial equivalent" of the claim brought before the State court. Fisher v. Texas, 169 F.3d 295, 303 (5th Cir. 1999). Yet, the petitioner "need not spell out each syllable of the claim before the state court" for a claim to have been "fairly presented", and thereby fulfill the exhaustion requirement. Id.

16

AEDPA's deferential standard of review does not apply if a petitioner has properly exhausted his claim by raising it in the state court, but the state court misunderstood the nature of the claim, and therefore did not adjudicate that particular claim on the merits. See Henderson v. Cockrell, __ F.3d __, 2003 WL 21310813 at *4 (5th Cir. June 9, 2003) (citing Chadwick v. Janecka, 312 F.3d 597, 606 (3d Cir. 2002)). This Court reviews such claims under pre-AEDPA standards of review. Id.; see Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo review to an ineffective assistance of counsel claim that petitioner raised in state court, but the state court did not adjudicate on the merits).

It is clear from the record that Riley presented this specific claim of ineffective assistance of counsel at the state habeas level. Riley first raised this argument in his petition for state habeas relief.[9] Moreover, Riley's habeas counsel raised this argument during the state habeas hearing. During the hearing, Wright acknowledged that acceptance of responsibility is "obviously" a mitigating factor.[10] Nevertheless, as the district court noted, the state habeas court did not make findings with regard to this

---

[9]In his petition, Riley argued:

> [A]ny benefit by pleading guilty to the jury was wasted when trial counsel conceded that there was no mitigation evidence. Applicant's plea of guilty could have been effectively argued as evidence of Applicant's acceptance of responsibility and remorse for his conduct. Acceptance of responsibility has been recognized as mitigation evidence.

1 C.R. at 22.


[10]2 S.H. Tr. at 85-86.

argument. Because Riley exhausted this sub-claim at the state level, the district court was correct in applying de novo review to this aspect of Riley's ineffective assistance claim. Jones, 163 F.3d at 299-300.

The district court assumed, arguendo, that Riley established the first prong of Strickland, and that the jury did not factor in Riley's guilty plea and acceptance of responsibility, but they would have if Wright had made the argument. Notwithstanding this conclusion, the district court found that Riley failed to prove that Wright's ineffective performance prejudiced the outcome of the sentencing proceedings, because the jury had found that there was a probability that Riley would be dangerous in the future. The district court concluded that it was improbable that the mere fact that Riley accepted responsibility for his past conduct would cause the jury to overlook his future dangerousness.

Here, Riley has not demonstrated that reasonable jurists would find the district court's assessment of his claim was debatable or wrong. Wright stated in his closing argument that Riley had confessed and led the police to evidence that they may not have found otherwise. Because the jury had this information before them, it is possible that a juror may have taken it into consideration, and ultimately determined that this mitigating factor did not outweigh the aggravating factors of his crime, given that it was so brutal in nature. See Williams, 529 U.S. at 397-98 (explaining the importance of weighing mitigating evidence versus aggravating factors). As such, it is unlikely that reasonable jurists would find it debatable that Wright's deficient performance in this regard rendered the jury's

18

decision unreliable.  Moreover, it was not unreasonable for the district court to conclude that it was possible that, by arguing that Riley had accepted responsibility as a mitigating factor, Wright would not have caused the jury to overlook the issue of future dangerousness.  This is especially true, considering that Wright's main strategic goal was to show that Riley was not a future danger.  Thus, we deny COA on this claim.

## IV.  CONCLUSION

For the foregoing reasons, we DENY Riley's motion for additional COAs based on his claims of lack of jurisdiction to prosecute, and ineffective assistance of counsel for arguing "no mitigation" and failing to argue that Riley had accepted responsibility for his actions by pleading guilty.