United States Court of Appeals
Fifth Circuit

**F I L E D**

October 21, 2003

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 03-20245

DOMINIQUE JEROME GREEN,

Petitioner-Appellant,

versus

DOUG DRETKE,
Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
(H-01-CV-104)

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

At issue is whether we will permit an appeal from a Texas capital murder conviction, for which a death sentence was imposed. Dominique Jerome Green must make the requisite "substantial showing of the denial of a constitutional right", 28 U.S.C. § 2253(c)(2), in order to be granted a Certificate of Appealability (COA) from the denial of his 28 U.S.C. § 2254 habeas petition. The COA request is **DENIED**.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On the evening of 13 October 1992, Green and three others undertook a series of armed robberies, culminating in a murder on the morning of 14 October. Green was charged with capital murder; a jury found him guilty. Based on the jury's answers to the three sentencing special issues for capital murder under Texas law, the death penalty was imposed.

After the Texas Court of Criminal Appeals remanded to the trial court for findings regarding the admission of some of Green's statements, *Green v. State*, 906 S.W.2d 937 (Tex. Crim. App. 1995), Green's conviction was affirmed, *Green v. State*, 934 S.W.2d 92 (Tex. Crim. App. 1996). The Supreme Court of the United States denied certiorari. *Green v. Texas*, 520 U.S. 1200 (1997).

In August 1997, Green filed for state habeas relief. In February 2000, the trial court entered findings of fact and conclusions of law, which were adopted by the Court of Criminal Appeals.

In January 2001, Green filed for federal habeas relief under 28 U.S.C. § 2254. Through an extremely detailed and comprehensive 98-page opinion, the district court in March 2002 denied both the petition and, *sua sponte*, a COA.

Green moved under FED. R. CIV. P. 59(e) to alter or amend the judgment. By a similarly thorough 31-page order, that motion was denied in February 2003.

The next month, subsequent to filing his notice of appeal, Green moved the district court to reconsider the COA-denial, citing the recently decided *Miller-El v. Cockrell*, 123 S. Ct. 1029 (2003). A COA was again denied.

## II.

Green filed for federal habeas relief after the 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA); his application is therefore subject to the constraints found in AEDPA. Under AEDPA, we cannot consider Green's appeal unless he first obtains a COA. 28 U.S.C. § 2253(c)(2); *e.g.,* *Miller-El*, 123 S. Ct. at 1034.

To obtain that COA, Green must make "a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2). Restated, he must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved [by the district court] in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted). In other words, "we ... look to the district court's application of AEDPA to the petitioner's constitutional claims and determine whether the [district] court's resolution was debatable among reasonable jurists". *Miniel v. Cockrell*, 339 F.3d 331, 336 (5th Cir. 2003); *see also* *Miller-El*, 123 S. Ct. at 1039; *Barraza v. Cockrell*, 330 F.3d 349, 351 (5th

3

Cir.), *petition for cert. filed*, No. 03-5645 (29 July 2003). At the COA stage, we do *not* apply the deferential AEDPA standard of review, found in 28 U.S.C. § 2254, for the merits of the habeas petition. *See **Miller-El***, 123 S. Ct. at 1042 ("Before the issuance of a COA, the Court of Appeals had no jurisdiction to resolve the merits of petitioner's constitutional claims.").

Green seeks a COA for each of the following claims: ineffective assistance of counsel at the penalty phase; constitutionally impermissible use of race at the guilt-innocence and penalty phases; and denial of an opportunity for a "full and fair hearing" at the state and federal habeas proceedings. None of these claims makes the "substantial showing of the denial of a constitutional right", required by 28 U.S.C. § 2253(c)(2).

A.

In considering a COA request based on claimed ineffective assistance of counsel (IAC), the well-known two-prong IAC standard under ***Strickland v. Washington***, 466 U.S. 668 (1984), forms the backdrop. On its merits, an IAC claim must demonstrate "that counsel's performance was both (1) constitutionally deficient; and (2) resulted in actual prejudice". ***Riley v. Cockrell***, 339 F.3d 308, 315 (5th Cir. 2003). Only objectively unreasonable performance will meet the first prong; only a showing of a reasonable probability of prejudice, sufficient to undermine confidence in the outcome, will meet the second. ***Id.***

4

1.

Green first claims insufficient investigation in developing mitigating evidence. He asserts that an inadequate investigation led counsel to fail to present additional mitigating evidence related to: domestic abuse and neglect; positive elements in Green's past; and Green's mental health. In addition, he claims the mitigating evidence presented by counsel may have been harmful.

The state habeas court found: witnesses called by Green's counsel testified about the conditions of Green's family life, including instances of severe abuse by his mother, which counsel intended to present as part of their mitigation strategy; counsel undertook investigations that did not lead to testimony, including interviews with Green's father (who said he would not be a good witness for his son) and with a psychiatrist (who was not called as a witness, in part because he referred to Green as a "sociopath"); and counsel had reasons for not conducting some interviews, believing that, because Green was not close to his family, extensive interviews of his relatives would not be productive; and, concerning Green's contention that his brother, Marlin, should have been called as a witness, Green did not want him called.

In the light of these findings, the state habeas court concluded: counsel's performance had not been deficient, having adopted and carried out a strategy for the mitigation phase; and, in the alternative, Green had not been prejudiced.

5

The district court recognized that this is not a case in which counsel failed to present any mitigating evidence, but one in which, as in **Tucker v. Johnson**, 242 F.3d 617, 622 (5th Cir.), *cert. denied*, 533 U.S. 972 (2001), the "argument is that counsel should have put on a stronger case in mitigation". Properly relying on facts found by the state habeas court, the district court summarized the testimony elicited by counsel, as well as the reasons certain interviews were not conducted, and reasons for not calling individuals who were interviewed. Against this information, the district court compared the information presented in affidavits to the state habeas court. Reviewing the facts before it in the light of AEDPA's standards, the district court determined that the state habeas court's decision of no deficient performance was neither unreasonable nor contrary to federal law. In addition, the district court ruled that affidavits of expert mental health witnesses presented to it for the first time in the Rule 59(e) motion were procedurally barred because they had not been presented to the state habeas court.

The district court's application of AEDPA to this claim is not debatable among reasonable jurists. Green's counsel called seven witnesses, including: three officials testifying on Green's behalf who had dealt with him during his juvenile probation; a clinical psychologist; and his mother. Counsel also cross-examined all except two of the State's penalty phase witnesses. Given the

6

mitigating evidence introduced to show the difficulties of Green's domestic life, the evidence Green now claims counsel should have introduced is mostly duplicative.

As noted, Green asserts that his brother, Marlin, should have been called to testify. But, in addition to the fact that Green instructed his attorneys not to call Marlin, the information that would have been presented through Marlin's proposed testimony about the difficulties of Green's domestic life was presented through others. The state habeas court found: one probation officer testified about Green's "deplorable living conditions both at home and in the rented storage unit, [and] his mother's complete lack of care"; that a psychiatrist testified that Green "had not been raised by anyone, that his mother had serious psychiatric problems"; that Green's mother testified to an instance of abuse in which she held Green's hand "in a fire for so long that it required hospital care".

The positive testimony that, according to Green, only Marlin could have given — about instances in which Green cared for Marlin — is insufficient to make the requisite showing for COA purposes.

2.

Green complains of the response counsel made to the potentially damaging testimony by Green's mother at the penalty phase. He contends counsel should have presented evidence both relating to her mental illness and supplementing her testimony.

The state habeas court's findings of fact include: counsel

7

had a strategy for calling the mother; and counsel had interviewed the mother's doctor about her condition. That court concluded: given the purpose of the testimony and its intended effect, counsel's performance had not been deficient; and Green had not been prejudiced by the absence of evidence he feels should have been presented.

In reviewing these rulings, the district court noted the irrelevance of additional evidence about the mother's mental condition, because: her failings as a parent had been presented by previous witnesses; and her behavior as a witness aided Green by permitting the jury to witness the behavior that Green had experienced. The district court concluded, under the AEDPA standards, that the state habeas court's decision was neither unreasonable nor contrary to federal law.

Reasonable jurists would agree with the district court's application of AEDPA. The mother's difficulties were made obvious to the jury. When juxtaposed with evidence about her ill-treatment of Green, they served as evidence a jury could understand without expert testimony. The additional information Green maintains should have been presented does not create the requisite showing for COA purposes.

3.

The third basis on which Green claims IAC is based on his counsel's response to a letter placed in evidence. The letter,

8

written post-arrest by Green while in jail awaiting trial, was introduced by the State. The portion of the letter challenged by Green stated: "I don't care if a nigga with me or not 'I forever be a trigga happy nigga'". Green claims counsel should have put this letter in context by explaining to the jury that the challenged words were in quotation marks and from a "rap" recording. Had counsel done so, Green asserts, the jury could have seen that the statement was not a literal prediction of future events but instead a colloquialism.

The state habeas court ruled: counsel's performance had not been deficient because Green had failed to explain the phrase to counsel; and Green had not been prejudiced because an explanation of the phrase and its origins could have been more inflammatory than the unexplained quote. (The phrase is the title of a "rap" recording using violent language about an armed and violent robbery.) Reviewing these findings under AEDPA's standards, the district court ruled that they were neither unreasonable nor contrary to federal law.

The district court's ruling is not subject to debate among reasonable jurists. No reasonable jurist could debate the ruling that counsel was not deficient for failing to identify the source of the quote.

Nor would a reasonable jurist debate the ruling that Green had not made a showing of a likelihood that he was prejudiced by the

9

absence of an explanation; such explanation could have involved providing the jury with a series of violent images with which Green was apparently familiar. In addition, because the letter was in evidence, the jury could see the quotation marks around the challenged language.

Green also contends that effective counsel would have presented expert testimony to put the challenged phrase in a social context, a context in which it served as an ironic refutation of perceptions of violence. Such testimony does not alter our conclusion that Green fails to make the requisite showing for a COA on this claim.

4.

The final basis on which Green predicates an IAC claim meriting a COA is one of cumulative effect. Green contends that, even if counsel's errors do not merit a COA when viewed individually, when viewed as a whole they serve to cast doubt on counsel's tactics for the penalty phase.

This claim was not properly identified to us as a COA issue. While Green does cite cases to support the claim that cumulative error may be the basis for IAC, he makes no claims about his own case which would permit anyone to conclude that there were such cumulative errors here. Rather than point to any facts in his own case, he simply points to a grant of certiorari in another case as sufficient basis for our granting a COA. The existence of

certiorari is insufficient to cause reasonable jurists to debate the district court's holding there was no IAC.

Even assuming the issue has properly been presented, no reasonable jurist could doubt the district court's resolution of this IAC claim. The district court found no deficient performance and no showing of prejudice. "Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996), *cert. denied*, 519 U.S. 1094 (1997).

## B.

Green requests a COA on two related claims that his prosecution and sentence were affected by racial bias that denied a constitutional right.

## 1.

Green notes that of the four individuals who participated in the events on 13-14 October 1992, the three who are black, including Green, were prosecuted; the one white individual was not. In addition to Green's being convicted of capital murder, two others pleaded guilty to armed robbery.

To show selective prosecution, Green had to satisfy a two-part test. First, he had to "make out a *prima facie* showing that he has been singled out for prosecution but others similarly situated of a different race were not prosecuted". *United States v. Webster*, 162 F.3d 308, 333-34 (5th Cir. 1998), *cert. denied*, 528 U.S. 829

11

(1999).  Second, he had to "demonstrate that the discriminatory selection of him for prosecution is invidious or in bad faith, in that it rests on such impermissible considerations as race, religion, or the desire to prevent his exercise of his constitutional rights".  *Id*. at 334.

The state habeas court found that there was evidence to support prosecution of the three black individuals, including corroboration by co-conspirators, eyewitness identification, and admissions of guilt.  It also found that the white individual provided consistent testimony denying involvement in the crimes.  Although the state habeas court ruled that the claim had been presented on direct appeal and, therefore, was not subject to habeas review, it ruled in the alternative that all four individuals were treated in proportion to their culpability and the strength of the evidence against them.

The district court, reviewing the evidence before the state habeas court, ruled that Green had not demonstrated that the white individual was similarly situated to him.  Against Green's claims based on the circumstances of the incident, the district court considered the prosecutor's affidavit explaining the reasons underlying the choice of who would be prosecuted.  Finding that Green had failed to make a *prima facie* case, the district court determined, under AEDPA's standards, that the state habeas court's decision was neither unreasonable nor contrary to federal law.

Like the district court, we do not reach the second prong of the selective prosecution test because, for COA purposes, Green has not sufficiently shown, pursuant to the first prong, that reasonable jurists would debate the district court's ruling that *similarly situated* persons of a different race were *not* prosecuted. Green has not shown that the state findings were clearly erroneous. Instead, he has noted that the white individual was occasionally referred to as a party or co-conspirator by the prosecution and admitted to receiving stolen property. Green relies on this in an attempt to create an inference that the white individual was similarly situated to the others involved. This is in contrast to the deference to prosecutorial discretion generally, and the clearly-expressed and well-supported affidavit by the prosecutor specifically.

### 2.

In the sentencing phase, as earlier described, the prosecution introduced the letter written by Green while in jail awaiting trial. In closing argument, the prosecutor asked the jury to consider that Green had described himself as a "trigger happy *nigger*" (instead of "nigga", as used in the letter; emphasis added). Green seeks a COA on whether this claimed use of race by the prosecution denied him equal protection of the law.

### a.

In his federal application, Green did not clearly delineate *two* claims (sub-issues) of inflammatory speech: the introduction of the letter with the phrase "trigga happy nigga"; and the closing argument in which the prosecutor said that Green had described himself as a "trigger happy nigger". It is clear that the district court only understood Green to be referring to one event, because the district court only considered the language used in the letter. It was only in Green's reply to the response to his Rule 59(e) motion that Green delineated two sub-issues for an equal protection claim. Needless to say, that is too late; we will not consider this changed-language sub-issue. *See Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002), *cert. denied*, 537 U.S. 1116 (2003).

b.

The district court, recognizing that the equal protection claim had been mingled with the IAC claim, did address the equal protection implications of the letter. For Green's request for a COA on this ground, he did not exhaust this claim in state court. Neither his direct appeal nor his state habeas proceeding challenged, on equal protection grounds, the prosecution's introduction of the letter (or use of the word "nigger" instead of "nigga"); on direct appeal, he only challenged the prejudicial value of the letter as an *evidentiary* concern. *See Green v. State*, 934 S.W.2d 92, 103-05 (Tex. Crim. App. 1996). Because Green did not exhaust his claims in state court, he cannot now make a

14

showing, for COA purposes, of such a deprivation in his federal application.  28 U.S.C. § 2254(b)(1); **Anderson v. Johnson**, 338 F.3d 382, 386 (5th Cir. 2003) (noting that exhaustion requirement "is not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition").

c.

In the alternative, Green does not make the requisite showing for a COA on either of the two sub-issues concerning the challenged words (in the letter and by the prosecutor) and equal protection.

C.

Green makes two claims about the district court's resolution of procedural issues before it.  Each claim is related to his maintaining he did not receive a "full and fair hearing" in state court.

1.

First, Green claims the district court was incorrect in applying AEDPA's presumption that findings of fact from the state proceeding are correct.  *See* 28 U.S.C. § 2254(e)(1).  Green bases this on the fact that his state habeas proceeding was a "paper hearing" before a judge other than the one who presided at trial.

As explained *supra*, our review is to determine whether jurists of reason would debate the district court's application of AEDPA. Such jurists could not debate that the rule urged by Green is precluded in this circuit.  **Valdez v. Cockrell**, 274 F.3d 941, 948

(5th Cir. 2001) ("[A] full and fair hearing is not a prerequisite to the application of AEDPA's deferential framework".), *cert. denied*, 537 U.S. 883 (2002).

In any event, the hearing Green received for his state habeas petition was sufficient. In August 1997, Green filed that petition, with 15 supporting documents purporting to be affidavits. That the state court could not consider four of them (because they were not signed) is not a flaw in the hearing accorded Green. Rather, it demonstrates that the state court examined all the documents before it. (In addition, the court considered three affidavits filed on behalf of the State, further reinforcing the thoroughness of the hearing.) In November 1999, Green filed proposed findings of fact and conclusions of law with the state court. Those proposed findings and conclusions were not adopted by the state habeas court. Green fails to make the requisite showing for a COA concerning the adequacy of the state habeas proceeding.

2.

Second, Green contends that the district court improperly denied his discovery requests. *Hill v. Johnson*, 210 F.3d 481 (5th Cir. 2000), *cert. denied,* 532 U.S. 1039 (2001), reviewed a COA request on such a ground under a standard of whether the individual seeking the COA had established "that the question whether the district court abused its discretion in denying this request is debatable among jurists of reason". *Id*. at 487. Whether to permit

16

discovery is committed to such discretion by Rule 6(a) of the Rules Governing § 2254 Cases.

Because discovery must "relate solely to a specifically alleged factual dispute, not to a general allegation", *Clark v. Johnson*, 202 F.3d 760, 767 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), reasonable jurists could not debate that the district court acted within its discretion in refusing to grant discovery. Green's discovery requests did not make specific requests regarding specific factual disputes. It was, instead, a list of sources where he could possibly find evidence to support his claims. The district court, "especially in light of the AEDPA's strict standards", ruled that none of the requests had merit.

In addition to its original disposition, the district court responded at length to Green's discovery requests in denying his Rule 59(e) motion. The district court recognized that its ability to permit discovery was limited by the "good cause" requirement found in Rule 6 of the Rules Governing § 2254 Cases, and that this "good cause" requirement was directed at the likelihood of success in the habeas petition. "Good cause may be found when a petition for habeas corpus relief establishes a prima facie claim for relief." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.) (quotation marks omitted), *cert. denied*, 531 U.S. 957 (2000).

Against this background, Green's discovery requests — according to the district court, "a cursory motion asking for leave

to take discovery of nearly every person involved in [Green's] trial" — do not satisfy the standard for a COA.

III.

For the foregoing reasons, a COA is

**DENIED.**