United States Court of Appeals
Fifth Circuit

**F I L E D**

November 23, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-11094

GARY STERLING,

Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
For the Northern District of Texas

(3:01-CV-0228)

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM[*]:

Petitioner Gary Lynn Sterling was convicted of capital murder in Texas and sentenced to death. Sterling filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 2254. The district court denied Sterling's petition. The district court also denied Sterling's application for a certificate of appealability

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("COA"). Sterling requested a COA from this Court pursuant to 28 U.S.C. § 2253(c)(2) on several issues. We granted Sterling a COA as to his *Strickland v. Washington*, 466 U.S. 668 (1984), ineffective assistance of counsel ("IAC") claim based on his counsel's failure to question juror Victor Walther ("Walther") about racial bias during *voir dire*. For the following reasons, we AFFIRM the judgment of the district court.

## BACKGROUND

In February 1989 Sterling was convicted and sentenced to death for the capital offense of murdering John W. Carthey in the course of committing or attempting to commit robbery. On direct appeal in 1992, the Texas Court of Criminal Appeals affirmed Sterling's conviction and sentence; the Supreme Court of the United States denied certiorari. In 1994 the district court dismissed Sterling's initial habeas corpus petition for failure to exhaust state court remedies. This Court affirmed the dismissal of Sterling's unexhausted petition, but the Supreme Court granted certiorari, vacated the judgment, and remanded for further proceedings. On remand in 1995, this Court again affirmed the district court's dismissal of Sterling's unexhausted petition.

In December 1996 Sterling filed his state habeas application. After conducting an evidentiary hearing, the trial court entered findings of fact and conclusions of law recommending the denial of relief. As to the particular IAC issue Sterling currently appeals,

2

the trial court found: "Applicant's trial counsel was not deficient by reason of his failure to question juror Walther about racial bias." In 2001 the Court of Criminal Appeals adopted the trial judge's findings and conclusions and denied habeas relief. Later that same year, Sterling filed a subsequent application for state habeas relief, which the Texas Court of Criminal Appeals dismissed as an abuse of the writ. In 2002 the Supreme Court denied certiorari.

Sterling then filed his petition for a writ of habeas corpus in district court, which the court denied after oral argument in 2003. As to the particular IAC issue Sterling currently appeals, the district court found: "Considering the strategic nature of Sterling's counsel's conduct, Dunn's personal knowledge about, and assessment of Walther, and Walther's answers during voir dire examination, the state habeas court did not unreasonably determine that Sterling's counsel was not ineffective for failing to inquire of Walther about racial bias." The district court also denied Sterling's motion to reconsider the judgment. Sterling then noticed his appeal, and the district court denied his application for COA. We granted Sterling a COA as to his **Strickland** claim of IAC based on his counsel's failure to question Walther about racial bias during *voir dire*.

## DISCUSSION

Sterling filed his § 2254 petition for a writ of habeas corpus

3

after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  In a habeas corpus appeal, this Court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standards to the state court's decision as did the district court.  **Busby v. Dretke**, 359 F.3d 708, 713 (5th Cir. 2004).

Under AEDPA, this Court may not grant relief on a claim the state court has adjudicated on the merits "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)-(d)(1) (2004).  "A state court's decision is deemed 'contrary to' clearly established federal law if it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts."  **Busby**, 359 F.3d at 713 (citing **Williams v. Taylor**, 529 U.S. 362, 405-06 (2000)).  "A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable."  **Pondexter v. Dretke**, 346 F.3d 142, 146 (5th Cir. 2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous."  **Wiggins v. Smith**, 539 U.S. 510, 520 (2003).  We presume the state

4

court's findings of fact are correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established law.**

In order to establish a Sixth Amendment IAC violation, a petitioner must prove both (1) that counsel rendered deficient performance and (2) that counsel's actions resulted in actual prejudice. *Strickland*, 466 U.S. at 687-88, 691-92; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999). "Unless a defendant makes both showings [under *Strickland*], it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." 466 U.S. at 687.

It is well settled that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* It is the petitioner who must overcome the

5

presumption that defense counsel's performance fell within the broad range of reasonable professional assistance. *Riley v. Cockrell*, 339 F.3d 308, 315 (5th Cir. 2003).

Even if counsel's performance is found deficient, the petitioner must still demonstrate that such deficiency rendered the verdicts unfair or unreliable. *Id.* (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). For a petitioner to meet the prejudice prong of *Strickland* "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687.

Sterling is African-American; and Walther, who sat on Sterling's capital murder jury, is Caucasian. Sterling maintains that Walther is racist as to African-Americans and that his prejudiced views link race with criminal behavior. Sterling bases this contention on a post-trial affidavit where Walther referenced the criminal behavior of "some nig\*\*rs who live a couple of blocks over." At the state habeas hearing, Walther testified that he likely used that term at the time of Sterling's trial. Sterling argues that one of his defense counsel, Robert Dunn, was familiar with Walther's attitude toward African-Americans because he had known Walther since his youth. Thus, Sterling asserts Dunn was ineffective in that he did not question Walther during *voir dire* about his racial bias and its effect on his ability to serve impartially as a juror.

6

Sterling makes his IAC argument based on **Turner v. Murray**, 476 U.S. 28 (1986), **Wiggins**, and ABA Guideline 10.10.2(A) and (B). Sterling argues that Dunn failed to adequately prepare for, investigate, and question the possibility of racial bias in potential jurors in Sterling's trial. Sterling maintains that Dunn's asserted strategic reasons for accepting Walther cannot justify Dunn's refusal to inquire into the effect of Walther's racial views on his suitability as a juror in Sterling's case. Dunn's alleged reasons were that he felt Walther was a fair man and he thought Walther's previous contacts with him would help Sterling. Sterling argues that any perceived advantage to Sterling stemming from Walther's previous relationship with Dunn may have been overwhelmed by a much larger disadvantage to Sterling stemming from Walther's racist views. If Dunn had investigated further into Walther's racial attitudes, Dunn could have assessed whether the balance came out in Sterling's favor.

Sterling also contends that Dunn's proferred reasoning that jurors do not answer questions about racial bias honestly is overbroad and cannot be reconciled with the basic assumptions and duties of counsel under the jury system. Moreover, Walther's racist views cannot be downplayed by the state. Thus, Sterling argues the state court's conclusion that trial counsel's decision not to examine Walther on racial issues despite his knowledge of Walther's racial bias did not constitute deficient performance was an

7

unreasonable application of clearly established federal law.

The state asserts that both sides asked numerous questions about Walther's ability to be fair and impartial during *voir dire*, especially in light of his prior representation by Dunn on several occasions; Walther clearly indicated he could be fair to both sides. Dunn testified at the state habeas hearing that despite any potential prejudiced views, he considered Walther a "fair man" and "probably a middle-of-the-road juror for Navarro County." Dunn also reasoned that because of his prior attorney-client relationship with Walther, Walther's presence on the jury would enure to Sterling's benefit. Both Dunn and his co-counsel on Sterling's defense, Kerri Anderson Donica ("Donica"), testified that the decision that Walther would be a favorable juror was a conscious and strategic trial tactic. Donica felt Dunn was very pleased to have Walther on the jury because of their prior relationship.

While Dunn did not question any potential jurors about racial bias, he stated this decision rested on his belief that he very seldom receives truthful answers. The state also points out that Sterling has not established that Walther was racially prejudiced. Walther testified at the state habeas hearing that "the color [of a defendant] doesn't make no difference" and that he felt the same way at the time of Sterling's trial and would have said so if asked. Walther also stated he has some very close friends who are

8

African-American; using the term "nig**r" did not make him a racist; and he did not consider himself to be a racist.

Moreover, in regard to the jury selection process, the state notes that counsel's actions during *voir dire* are considered to be a matter of trial strategy. *See **Teague v. Scott***, 60 F.3d 1167, 1172 (5th Cir. 1995). The state also contends that the state court at the evidentiary hearing was in the best position to evaluate the credibility and demeanor of Dunn and Walther. Thus, underlying the state court's factual finding of a lack of deficient performance are credibility choices in favor of Dunn and Walther that must be afforded a presumption of correctness. The state discounts Sterling's arguments based on **Turner** because the issue there was a trial court's failure to allow the defendant to question potential jurors about racial prejudices in spite of a specific request by the defendant. 476 U.S. at 30-31. However, the decision to make such request or delve into such questioning is properly left to defense counsel. *Id.* at 37 n.10. The state also argues that nothing in **Wiggins**, which dealt with defense counsel's duty to reasonably investigate mitigating evidence for use in the punishment phase, 539 U.S. at 524-27, or the ABA Guideline on *voir dire* and jury selection, establishes that Dunn's stated reasons for not questioning Walther about his racial views were objectively unreasonable.

Therefore, the state maintains that the state court's

9

conclusion that Dunn's performance as Sterling's defense counsel was not deficient was not objectively unreasonable. The state also asserts the district court correctly determined that considering the strategic nature of Dunn's conduct, Dunn's personal knowledge about and assessment of Walther, and Walther's answers during *voir dire*, the state habeas court was not unreasonable in its conclusion that Dunn's performance at *voir dire* did not amount to the deficient performance required to show IAC.

Under the deferential scrutiny accorded to defense counsel's trial decisions under ***Strickland***, we cannot say that the district court clearly erred in its findings on deficiency or erred in its legal conclusion that Sterling had not shown IAC. Here, Sterling did not rebut the state court's finding on deficiency with clear and convincing evidence; Sterling did not show that Dunn's decision not to question Walther on his racial views fell outside the wide range of reasonable strategic professional assistance. Sterling did not overcome the presumption that Dunn's challenged behavior "might be considered sound trial strategy." ***Strickland***, 466 U.S. at 689 (citation omitted). Therefore, Sterling has not sustained his burden on the deficiency prong of ***Strickland***. We thus agree with the district court and find that the state court's decision regarding the lack of a deficiency in performance by Dunn was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

Having sustained the state court's and the district court's determination that Sterling failed to demonstrate deficiency under *Strickland*, this Court need not reach the prejudice prong. *See **id.*** at 697 (explaining that failure to demonstrate either prong in the IAC analysis makes it unnecessary to examine the other).

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing, for the reasons set forth above, we AFFIRM the judgment of the district court.

**AFFIRMED.**