David Eugene MATTHEWS,
Petitioner–Appellant,

v.

Randy WHITE, Warden, Respondent–
Appellee.

No. 13–5901.

United States Court of Appeals,
Sixth Circuit.

Nov. 10, 2015.

ON BRIEF: David M. Barron, Kentucky Department of Public Advocacy Frankfort, Kentucky, Alan M. Freedman, Midwest Center for Justice, Ltd., Evanston, Illinois, for Appellant. Matthew R. Krygiel, Office of the Kentucky Attorney General, Frankfort, Kentucky, for Appellee.

Before SILER, MOORE, and CLAY, Circuit Judges.

## OPINION

KAREN NELSON MOORE, Circuit Judge.

In 1982, David Matthews was convicted of murder and sentenced to death. His conviction and sentence have been affirmed on direct appeal and in post-conviction proceedings. *See Matthews v. Commonwealth,* 709 S.W.2d 414 (Ky.1985); *Matthews v. Commonwealth,* No. 96–SC–805–MR (Ky. Nov. 20, 1997); *Matthews v. Simpson,* 603 F.Supp.2d 960 (W.D.Ky. 2009) (denying habeas petition), *rev'd in part sub nom. Matthews v. Parker,* 651 F.3d 489 (6th Cir.2011), *rev'd sub nom. Parker v. Matthews,* —— U.S. ——, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012). Having exhausted his judicial remedies, Matthews intends to petition the Governor of Kentucky for clemency under § 77 of the Kentucky Constitution. Matthews will base his request, at least in part, on what he thinks are mitigating factors related to his neuropsychological health. Before the court is the question whether Matthews is entitled to funding under 18 U.S.C. § 3599 so that he may secure a neuropsychological evaluation to support this argument. The district court denied his request, but appeared to rely on an incorrect rule that § 3599 funding is available only for use in federal proceedings and did not otherwise

explain its reasons for denying the request. We therefore **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this Opinion.

## I. BACKGROUND

Matthews received a neuropsychological evaluation from Dr. Richard Edelson in preparation for his trial in 1982, which resulted in a very general set of conclusions and a report that is just over two pages long. *See* R. 280–2 (Edelson Report) (Page ID # 1181–83). Matthews contends that this evaluation is both dated and incomplete, making it inadequate to support his clemency petition.

Dr. John Fabian, a forensic neuropsychologist, stated that in the decades since the 1982 evaluation was conducted, the Bender Gestalt Test—one of the tests that had been administered to Matthews—has become "very outdated, rarely used today, and [is] not helpful to gain a full and reliable understanding of the extent of Matthews' neuropsychological deficits and brain damage." R. 280–1 (Fabian Decl. ¶¶ 1, 12) (Page ID # 1162, 1164). Dr. Fabian also proffers that the 1982 evaluation was deficient in that: (1) it failed to "include any executive functioning testing," even though "[w]hen considering the brain mechanisms related to violence, executive functioning is a critical area to examine," *id.* ¶¶ 9–10 (Page ID # 1164); (2) it did not "thoroughly assess Matthews' neuro-cognitive functioning," as "[t]he evaluation was extremely limited in scope and results, culminating in a report that was only three pages and that spoke mainly in generalities," *id.* ¶ 11 (Page ID # 1164); and (3) it did not "consistently integrate [its] data of neuropsychological deficit with Matthews' chronic substance abuse, electrocution, and other trauma events that insult the brain," *id.* ¶ 12 (Page ID # 1164–65). If anything, Dr. Fabian concluded, the information contained in the report—along with evidence of Matthews's substance abuse, alcohol consumption, inhaling glue, malnutrition as a child, and an instance of having lost consciousness as a child due to an electric shock—led Dr. Fabian to conclude that it is likely "that Matthews suffers from some neuropsychological deficits and brain damage" and that "a full neuropsychological battery would be appropriate and would likely provide a much fuller picture of the extent and scope of Matthews' neuropsychological deficits." *Id.* ¶¶ 5, 7–8, 13 (Page ID # 1162–63, 1165).[1]

This additional information could support Matthews's petition for clemency from the Governor of Kentucky, so he asked the district court to authorize the payment of expenses associated with this evaluation pursuant to 18 U.S.C. § 3599. The district court denied Matthews's request. *See* R. 286 (Memorandum and Order) (Page ID # 1252–59). Much of the district court's opinion summarized the

---

1. In 1982, Matthews also received a psychiatric evaluation from Dr. Lee Chutkow, who diagnosed him with temporary alcohol abuse and adjustment disorder. This evaluation was criticized by a subsequent expert, Dr. Robert Smith, who met with Matthews once in 1994 and created a preliminary report based upon that interview and two psychological tests. *See* R. 284–3 (Smith 1994 Report at 1) (Page ID # 1218). The 1994 report noted that "there are a number of significant areas that warrant further assessment," *id.* at 8 (Page ID # 1225), and Dr. Smith was later appointed an expert for Matthews's federal habeas proceedings, at which point he submitted a report diagnosing Matthews with narcissistic personality disorder and a more chronic form of alcohol dependence, R. 284–4 (Smith 2006 Report) (Page ID # 1227–36). In Matthews's view, Dr. Smith's evaluation is inadequate for his clemency petition because it did not address neuropsychological deficits or the defects affecting Dr. Edelson's 1982 evaluation. *See* Appellant Reply Br. at 6–7.

facts and the parties' competing arguments. *See id.* The analysis section in Parts III.A and III.B expressed the State's arguments and Matthews's responses, but never provided a resolution. *See id.* at 5–7 (Page ID # 1256–58) (stating that Matthews's "case is more aligned with *Fautenberry v. Mitchell,* 572 F.3d 267 (6th Cir.2009)" than with a district court decision "in which funds were awarded for a neuropsychological evaluation and brain scan," but then summarizing Matthews's reasons for distinguishing *Fautenberry*); *id.* at 7 (Page ID # 1258) (summarizing a recent district court decision that denied a § 3599 request where "the request for a neuropsychologist seemed 'to be based upon the mere hope or suspicion that an expert may find something of use, and is not based on any showing of actual reasonable necessity'"); *id.* at 7–8 (Page ID # 1258–59) (quoting *Foley v. White,* No. 6:00–552–DCR, 2013 WL 990828, at *8 (E.D.Ky. Mar. 12, 2013)) (noting that Matthews "pointed to a history of events and behavior that can cause brain damage; he has provided an expert opinion that neuropsychological testing is warranted; and has explained why previous testing was inadequate and is now outdated," and then stating "[o]n the other hand, Dr. Fabian has already presented an affidavit containing opinions which the Governor could use"). The district court closed with Part III.C.:

> Petitioner asks for funds to make an argument before the state Governor. The Court finds it a questionable exercise of its discretion to allow the expenditure of federal funds to pursue a state remedy. While federally appointed counsel may well be entitled to make such a request, the granting of such funds is clearly not a right. Moreover, while this Court "is fully cognizant of the interests at stake in this proceeding . . . the Court also cannot condone the continual, repeated outflow of taxpayer funds" for matters which Petitioner "has already been given a full and fair opportunity to litigate." *Woods v. Thaler,* No. A–09–CA–789–SS, 2009 WL 3756847, at *7 (W.D.Tex. Nov. 6, 2009). The Court will exercise its discretion to deny the funds.

*Id.* at 8 (Page ID # 1259).

## II. ANALYSIS

### A. Requirements for a Motion Under 18 U.S.C. § 3599

18 U.S.C. § 3599 allows for the appointment of counsel in, among other things, "proceedings for executive or other clemency as may be available to the defendant." *Id.* § 3599(e). The statute also provides that "[u]pon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor." *Id.* § 3599(f). "The Supreme Court recently made clear 'that [18 U.S.C.] § 3599 authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation.'" *Fautenberry v. Mitchell,* 572 F.3d 267, 272 (6th Cir.2009) (Moore, J., concurring) (quoting *Harbison v. Bell,* 556 U.S. 180, 194, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009)). Section 3599(f) therefore authorizes the payment of fees related to an expert witness whose "'services are reasonably necessary for the representation of the defendant'" in connection with state clemency proceedings. *See id.* (quoting 18 U.S.C. § 3599(f)); *id.* at 268–71 (panel majority also applying § 3599 analysis to re-

quest for funds in support of a state clemency petition).

■ In general, this means "that an expert should be appointed 'when a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance.'" *Wright v. Angelone*, 151 F.3d 151, 163 (4th Cir.1998) (quoting *Williams v. Martin*, 618 F.2d 1021, 1026 (4th Cir. 1980)).[2] The issue is more often litigated in the context of federal habeas proceedings, where it is clearer what questions could affect the outcome of proceedings and thereby be considered "substantial," and what testimony might be useful to support the petitioner's argument. Clemency proceedings present different issues:

> [C]onsideration must be given to the nature and purpose of clemency proceedings. The clemency process takes place only after all judicial proceedings have been completed. In capital cases, such judicial proceedings include, at a minimum, trial, direct appeal, state post-conviction review, and federal habeas review, in all of which proceedings indigent prisoners are provided with legal representation and investigative and expert assistance at taxpayer expense. Clemency "proceedings are a matter of grace entirely distinct from judicial proceedings." *Harbison*, 556 U.S. at 192, 129 S.Ct. 1481. "Clemency is deeply rooted in our Anglo–American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." *Herrera v. Collins*, 506 U.S. 390, 411–12, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (footnote omitted). Thus, when a petitioner requests funds for investigative services for the purpose of clemency proceedings, the petitioner must show that the requested services are reasonably necessary to provide the Governor and Board of Pardons and Paroles the information they need in order to determine whether to exercise their discretion to extend grace to the petitioner in order to prevent a miscarriage of justice.

*Brown v. Stephens*, 762 F.3d 454, 460 (5th Cir.2014).

We addressed the issue briefly in *Fautenberry*, in which we affirmed a district court's denial of a § 3599 request for a

---

2. The need to show the existence of "substantial question" is not the same as the requirement apparently adopted by the Fifth and Eleventh Circuits that a § 3599 movant "demonstrate a substantial need" for the expert services. Neither Circuit has explained why this heightened standard is appropriate. *See Brown v. Stephens*, 762 F.3d 454, 459 (5th Cir.2014), *cert. denied*, —— U.S. ——, 135 S.Ct. 1733, 191 L.Ed.2d 701 (2015); *Gary v. Warden, Ga. Diagnostic Prison*, 686 F.3d 1261, 1268 (11th Cir.2012), *cert. denied*, —— U.S. ——, 133 S.Ct. 1734, 185 L.Ed.2d 795 (2013); *United States v. Brown*, 441 F.3d 1330, 1364 (11th Cir.2006), *cert. denied*, 549 U.S. 1182, 127 S.Ct. 1149, 166 L.Ed.2d 998 (2007); *Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir.2004), *cert. denied*, 543 U.S. 1056, 125 S.Ct. 866, 160 L.Ed.2d 781 (2005); *Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir.2000), *cert. denied*, 531 U.S. 831, 121 S.Ct. 84, 148 L.Ed.2d 46 (2000); *Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir.1997), *cert. denied*, 522 U.S. 963, 118 S.Ct. 399, 139 L.Ed.2d 312 (1997). The statute requires a showing that expert assistance is "reasonably necessary," 18 U.S.C. § 3599(f), so a rule that requires a showing of "substantial" necessity inappropriately "implies that the movant must carry a heavier burden than that contemplated by the statute." *Gary*, 686 F.3d at 1281 (Wilson, J., dissenting). Indeed, testimony could be "reasonably" necessary without being "substantially" necessary. *Compare Reasonable*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Fair, proper, or moderate under the circumstances; sensible"), *with Substantial*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Important, essential, and material; of real worth and importance" or "[c]onsiderable in amount or value; large in volume or number").

successive neuropsychological evaluation in a case in which the petitioner had not argued to the district court that a prior "evaluation was incomplete, outdated, or unreliable," nor "that a new evaluation might show that Fautenberry now suffers brain impairment more severe than that diagnosed 13 years ago," and had "advanced no evidence from which the district court could find that [a new] evaluation would not be duplicative of information already available to the state executives entertaining his clemency petition." 572 F.3d at 270–71. The majority of the panel thus held that "the district court was left without any explanation as to why a new assessment was 'reasonably necessary.'" *Id.* at 271. *But see id.* at 271–72 (Moore, J., concurring) (stating that the petitioner's "current mental state is essential to a determination of whether he is entitled to clemency"—especially given "a history of head trauma and ... significant brain impairment"—and that "[a] stale evaluation performed in 1996 does not serve this purpose" even absent "evidence of specific changes").

## B. The District Court Abused Its Discretion

■ We review the district court's denial of Matthews's § 3599 motion for abuse of discretion, which will be found if the district court "applie[d] the incorrect legal standard, misapplie[d] the correct legal standard, or relie[d] upon clearly erroneous findings of fact." *Fautenberry,* 572 F.3d at 268 (quoting *Getsy v. Mitchell,* 495 F.3d 295, 310 (6th Cir.2007) (en banc)). We conclude that the district court abused its discretion in two ways.

### 1. The District Court Applied an Erroneous Legal Standard

■ The district court stated that it was "a questionable exercise of its discretion to allow the expenditure of federal funds to pursue a state remedy." R. 286 (Memorandum and Order at 8) (Page ID # 1259). But that is not the law. *See Harbison,* 556 U.S. at 194, 129 S.Ct. 1481 (Section 3599 governs appointment in state clemency proceedings); *Fautenberry,* 572 F.3d at 268–71 (applying § 3599's "reasonably necessary" standard to a request for appointment in connection with state clemency proceedings that followed a federal habeas proceeding in which counsel had been appointed). Concerns regarding the use of federal funds to pursue state clemency therefore have no bearing on Matthews's § 3599 motion.

### 2. The District Court Did Not Explain Any Other Basis for Its Decision

■ The district court failed to explain what other legal standard it relied upon in denying Matthews's motion, if any. It recited the general standard that a § 3599 motion must show a reasonable necessity for the request, and reviewed the parties' competing arguments for applying or distinguishing *Fautenberry,* R. 286 (Memorandum and Order at 6–8) (Page ID # 1257–59), but never resolved those arguments. For each time in Parts III.A–B that it seemed to accept the State's argument, it followed up by seeming to credit Matthews's response. *See id.* Portions of Parts III.A. and III.B. could be read to imply that Matthews failed under *Fautenberry* to show a basis for his belief that he will find any additional information, and had Matthews provided no support for this hypothesis, such a holding might have been justified. *See Fautenberry,* 572 F.3d at 270 (petitioner failed to argue or otherwise show "that a new evaluation might show that Fautenberry now suffers brain impairment more severe than that diagnosed 13 years ago," that the new evaluation "would lead to a more accurate diag-

nosis," or "that his brain impairment has worsened"); *Brown,* 762 F.3d at 460–61 (only "speculation" supported a finding that the evidence sought would be anything but duplicative); *Edwards v. Roper,* 688 F.3d 449, 462–63 (8th Cir.2012) (only support for the need for an expert was counsel's "state[ment] that they had reason to believe that [petitioner's] mental condition had deteriorated in the five years since a prior evaluation"), *cert. denied,* —— U.S. ——, 134 S.Ct. 58, 187 L.Ed.2d 50 (2013). But it is not clear that the district court found as much, because it acknowledged that Matthews presented an affidavit from an expert as to why "neuropsychological testing is warranted," R. 286 (Memorandum and Order at 7–8) (Page ID # 1258–59), and that affidavit describes what additional information is likely to be obtained and how, R. 280–1 (Fabian Aff. ¶¶ 6–14) (Page ID # 1163–65).[3] It is therefore unclear whether the district court concluded that *Fautenberry* controls this case.

The district court's explanation of why it denied Matthews's motion came in Part III.C. of its Opinion, but that section is also unclear. After the statement regarding the use of federal funds for state clemency proceedings, the district court stated that Matthews's counsel "may well be entitled to make such a request," but that "the granting of such funds is clearly not a right." R. 286 (Memorandum and Order at 8) (Page ID # 1259). To be sure, § 3599 funds are not a "right" insofar as one must meet the reasonable-necessity standard to obtain them and § 3599(f) is phrased in discretionary language ("the court *may* authorize"), but district courts must explain what legal standards they apply and how those standards apply to the facts of a particular case.

The district court continued that "while this Court 'is fully cognizant of the interests at stake in this proceeding … the Court also cannot condone the continual, repeated outflow of taxpayer funds' for matters which Petitioner 'has already been given a full and fair opportunity to litigate,'" *id.* (quoting *Woods,* 2009 WL 3756847, at *7), and concluded "[t]he Court will exercise its discretion to deny the funds," *id.* The district court did not explain how Matthews's prior litigation of issues related to his mental health bears on whether it is reasonably necessary to have a supplemental evaluation to support his clemency petition. Thus, the passage could be read in two ways, neither of which supplies a basis to affirm the district court's decision on the existing record:

▇ *First,* the passage could be a finding that expenditure of funds was unneces-

---

**3.** Relatedly, the district court's statement at the close of Part III.B. that "[o]n the other hand, Dr. Fabian has already presented an affidavit containing opinions which the Governor could use," R. 286 (Memorandum and Order at 8) (Page ID # 1259), could support a finding that the relevant information is already in the record. *See Lawson v. Dixon,* 3 F.3d 743, 753 (4th Cir.1993) (psychiatrist's affidavit in support of a § 3599 request "stated that Dr. Royal already had formed his opinion on [the petitioner's] alleged lack of competency and inability to waive his right to a sentencing hearing"), *cert. denied,* 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 556 (1994). Again, it is not clear whether the district court ruled on this basis, and both the district court and the State have arguably acknowledged ways in which Dr. Fabian's affidavit is not the same thing as a complete report. *See* R. 286 (Memorandum and Order at 7–8) (Page ID # 1258–59) (noting that Dr. Fabian's affidavit "provided an expert opinion that neuropsychological testing [was] warranted and … explained why previous testing was inadequate and is now outdated"); R. 284 (Respondent's Opp. To Mot. at 5) (Page ID # 1210) (describing Matthews's request as a "fishing expedition[ ]" for physical deformities" that is not useful to the Governor's consideration of clemency "absent evidence of actual functional deficits").

sary because Matthews has already lost in court the argument that he intends to make to the Governor. But clemency is different than litigation, even if similar issues are raised. The Governor has "unfettered discretion" to consider a clemency application, *Baze v. Thompson*, 302 S.W.3d 57, 60 (Ky.2010), and so may decide that clemency is warranted even if Matthews could not meet a particular legal standard for mitigation in court. Notwithstanding the State's argument that the standard for clemency is "extremely high," Appellee Br. at 9, it remains unclear why Matthews's prior litigation of mental-health issues alone means that a new evaluation cannot be "reasonably necessary" for his clemency petition. *See Sanborn v. Parker*, No. 99–678–C, 2011 WL 6152849, at *1 (W.D.Ky. Dec. 12, 2011) (because "a bid for clemency is not reliant upon or restricted to matters argued before the courts, and is not restricted to cases where the guilt of the petitioner is in doubt," evidence of a petitioner's "neuropsychological state, including whether or not he has some sort of brain damage or abnormality, is indeed relevant to his clemency petition, even though [he] was twice judged competent to stand trial") (internal citations omitted).

■ *Second,* the district court could have meant that prior proceedings demonstrate that there is no new information left for Matthews to find, so the evaluation would be duplicative of information that is already in the record to be submitted to the Governor. A § 3599 motion could be denied if the movant failed entirely to explain what new information a new expert might uncover. *See, e.g., Brown,* 762 F.3d at 460–61 (movant "offered little beyond speculation that the proposed additional investigation would uncover some information different from that [a prior expert] described in her report and affidavit," which would be submitted to the clemency authority). But the district court recognized that Matthews "pointed to a history of events and behavior that can cause brain damage; he has provided an expert opinion that neuropsychological testing is warranted; and has explained why previous testing was inadequate and is now outdated." R. 286 (Memorandum and Order at 7–8) (Page ID # 1258–59). It is therefore not clear that the district court believed that Matthews sought duplicative evidence.[4]

It is unclear whether the district court relied upon any legal standard other than its concern about the use of federal funds in state clemency proceedings in denying Matthews's motion and, if it did, whether that other standard may appropriately be applied to deny Matthews's motion. We thus conclude that the district court abused its discretion.

## III. CONCLUSION

For these reasons, the district court appeared to rely upon an erroneous legal standard and otherwise failed to explain its application of any other legal standard to the facts of this case, thereby abusing its discretion. We therefore **VACATE** the denial of Matthews's motion and **RE-**

---

4. The State argues that the information on which Dr. Fabian's affidavit is based was almost all information that was known to prior examiners. *See* Appellee Br. at 9–10. Even if so, Dr. Fabian's evaluation would not necessarily be duplicative if he is able, as he suggests, to add to flawed, outdated, or incomplete examinations. Also, the State's argument regarding the lack of evidence that Matthews was treated for any of the issues from which Dr. Fabian hypothesized he might suffer, *id.* at 10, appears to be irrelevant to the question whether an examination by Dr. Fabian is reasonably necessary to providing the Governor a full picture of Matthews's neuropsychological state.