COOK, J., delivered the opinion of the court in which SUTTON, J., joined. WHITE, J. (pp. 565-70), delivered a separate dissenting opinion.
OPINION
COOK, Circuit Judge.
A Kentucky jury sentenced Robert Foley to death for the 1991 shootings of brothers Lynn and Rodney Vaughn. Foley v. Commonwealth, 942 S.W.2d 876, 879 (Ky. 1996). After exhausting all available appeals, Foley moved under 18 U.S.C. § 3599(a)(2) and (f) for the district court to appoint, counsel and grant funds to retain experts in anticipation of state clemency proceedings. Foley requested a neuropsy-chologist to evaluate the impact of multiple head injuries on his mental functioning. He also sought a ballistics and crime-scene reconstruction expert to support his contention that he shot Rodney in self-defense and that someone else shot Lynn. The district court granted his motion to appoint counsel but denied expert funds as not reasonably necessary for Foley’s clemency bid. Discerning no abuse of discretion in the district court’s decision, we AFFIRM.
Under 18 U.S.C. § 3599(f), a district court may authorize “the payment of fees related to an expert witness whose ‘services are reasonably necessary for the representation of the defendant.’ ” Matthews v. White, 807 F.3d 756, 759 (6th Cir. 2015) (quoting Fautenberry v. Mitchell, 572 F.3d 267, 272 (6th Cir. 2009) (Moore, J., concurring)). A district court should approve funds when “a substantial question exists over an issue requiring expert testimony for its resolution and the defendant’s position cannot be fully developed without professional assistance.” Id. at 760 (quoting Wright v. Angelone, 151 F.3d 151, 163 (4th Cir. 1998)). In the clemency context, “the petitioner must show that the requested services are reasonably necessary to provide the Governor and [Parole Board] the information they need in order to determine whether to exercise their discretion to extend grace to the petitioner in order to prevent a miscarriage of justice.” 'Id. (quoting Brown v. Stephens, 762 F.3d 454, 460 (5th Cir. 2014)).
We review a district court’s decision to deny funds for an abuse of discretion. Fautenberry, 572 F.3d at 268. “A district court abuses its discretion where it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact.” Id. at 268-69 (quoting Getsy v. Mitchell, 495 F.3d 295, 310 (6th Cir. 2007) (en banc)). If a district court acts within its sound discretion, its decision stands “even, if we would have decided the matter differently.” Id. at 270 (quoting Workman v. Bredesen, 486 F.3d 896, 923-24 (6th Cir. 2007) (Cole, J., dissenting)).
Foley insists the district court abused its discretion in denying funds for a neuropsy-chologist and a ballistics and crime-scene reconstruction expert. We examine each request in turn.

A. Neuropsychologist

Foley alleges he suffered several head injuries throughout his life that may have contributed to his violent behavior. In support of his request for a neuropsyehologist to evaluate the effect of these injuries, he supplied an affidavit from his mother Lois Foley, transcripts of his family’s post-conviction testimony, a newspaper article, medical records, and a document from the Kentucky Department of Corrections.
*564 In her affidavit, Lois swore that she ingested harmful substances when pregnant with Foley and that Foley experienced multiple head injuries as a child and as an adult. Post-conviction testimony from Lois and Foley’s brother mirrored those allegations. According to the newspaper article, Foley — although not seriously injured — required hospital treatment after a car wreck in 1975 but an x-ray of Foley’s head taken after that accident showed no cranial injury. Similarly, he was involved in another car crash in February 1991, causing lower-back pain and an abrasion on his forehead, and he experienced temporary leg numbness in May 1991. A CT scan and x-ray of Foley’s head after the second accident came back normal. Finally, the prison document details an incident in 2011 when Foley became “woosy” and fell, remaining unconscious for one to three minutes.
In denying funds, the district court found that “Foley does not have a long history of multiple head injuries, a history of childhood developmental issues, and is not of extremely low intelligence.” To the contrary, Foley “was quite intelligent and had been fully involved in assisting his own defense. He had no history of mental illness ... [and] was married and had been operating his own trucking company.” Moreover, the district court noted that “Foley’s competency and mental health have been discussed, analyzed, and adjudged numerous times before this Court and others, and his arguments have consistently been found to be without merit.” Thus, no reasonable necessity supported Foley’s request for a neuropsychologist.
Foley claims the district court clearly erred in finding that he lacked “a long history of multiple head injuries.” But given the lack of medical documentation to support his family’s testimony and the absence of any indicators of brain damage or mental illness in the record, the district court’s assessment was not clearly erroneous. Though Foley points to his past acts of aggression as evidencing brain trauma, his background and criminal history suggest that he is violent, not mentally impaired.
Foley further argues that the district court’s order flouts our decision in Matthews v. White, 807 F.3d 756 (6th Cir. 2015), by-relying on prior state and federal court adjudications concerning Foley’s mental health. In Matthews, we held that the district court abused its discretion by “appearing] to rely on an incorrect rule that § 3599 funding is available only for use in federal proceedings and [by] not otherwise explaining] its reasons for denying the request.” Id. at 757-58. In discussing possible rationales for the district court’s decision, this court mentioned that “it remains unclear why [defendant’s] prior litigation of mental-health issues alone means that a new evaluation cannot be ‘reasonably necessary’ for his clemency petition.” Id. at 763 (emphasis added) (citing Sanborn v. Parker, No. 99-678-C, 2011 WL 6152849, at *1 (W.D. Ky. Dec. 12, 2011)). This language in Matthews cannot support Foley’s position that a district court abuses its discretion by relying — in part — on prior decisions addressing similar issues. Here, the district court independently reviewed the record, noted the prior decisions, and found the reasons underlying them persuasive before reaching its conclusion. And the court recognized that “previous findings of competency ... are not dispositive of Foley’s [§ 3599] motion.” We therefore discern no abuse of discretion.

B. Ballistics and Crime-Scene Reconstruction Expert

Foley also requests an expert in ballistics and crime-scene reconstruction to sup *565 port his allegations of actual innocence and self-defense. He attached to his motion an affidavit from an expert, John Nixon, explaining how the victims’ injuries and the bullet trajectories are consistent with Foley’s version of the events. Foley insists that Nixon requires additional funds to more thoroughly review the case.
The district court denied Foley’s request, finding that “[gjiven the expansive and detailed nature of the record of this case, a ‘full’ review of a ballistics expert would only be redundant of what is already contained in the record.” Specifically, the court explained that Foley’s lay witness, Pershing Hayes, testified at trial about the bullet trajectories and implied that Foley could not have shot Lynn Vaughn. The court also found that “Foley now has the benefit of [Nixon’s] expert opinion,” rendering further analysis duplicative. Finally, the court noted that “[t]he jury, along with various appellate and reviewing courts, ... found the overwhelming evidence of guilt far outweighed any far-reaching allegation of self-defense and actual innocence.”
Foley claims the district court clearly erred in finding that Hayes testified at trial about the trajectory and irregularity of bullets found at the scene. He notes that the trial court sustained an objection to Foley’s attorney asking Hayes about the angle of the bullets. But Foley ignores that Hayes’s complete ballistics analysis appears in Hayes’s, avowal testimony. The district court thus correctly concluded that the record contains Hayes’s ballistics testimony for the Kentucky Governor to review.
Next, Foley again cites Matthews in arguing that the district court committed legal error by relying on previous decisions regarding the ballistics testimony. But the district court relied on these decisions because they persuasively described the overwhelming proof of Foley’s guilt and supported its duplicative-evidence rationale. It'was entitled to do so.
Foley maintains that additional funds are reasonably necessary for Nixon to “review more of the case materials; create diagrams of the projectiles based on witnesses’ testimony and the autopsy reports, and to produce a computer animation of events based on the witnesses’ testimony and the autopsy reports.” In his affidavit, however, Nixon explained that he reviewed the autopsy reports of both Vaughn brothers, the lab reports describing the bullets and bullet fragments, the trial testimony and report of the state’s ballistics expert, and the trial testimony of the witnesses to the murders. Foley fails to identify any additional materials that Nixon has yet to examine. Given the comprehensive nature of Nixon’s report, the district court’s finding that further evaluation of the evidence is not reasonably necessary makes sense and fell within its discretion. See Fautenberry, 572 F.3d at 270-71 (“[Petitioner] advanced no evidence from which the district court could find that [the expert’s] evaluation would not be duplicative of information already available to the state executives entertaining his clemency petition.”).
Finally, we note that Foley is under additional death sentences for murdering four people in 1989. Foley v. Commonwealth, 953 S.W.2d 924, 928 (Ky. 1997). The ballistics and crime-scene evidence he seeks to present fails to address those crimes.
For these reasons, we AFFIRM.